EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL SANTOS ALTIERI, acusado y apelante.

Núm. 12396.—*Sometido:* Julio 1, 1947. *Resuelto:* Julio 18, 1947.

*B. Quiñones Elías* y *José Rafael Arcelay,* abogados del apelante; *Hon. Procurador General Luis Negrón Fernández,* y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Ante la Corte de Distrito de Aguadilla se formuló acusación contra Miguel Santos Altieri por infracción a la Ley núm. 228 de 1942 (pág. 1269), según fué enmendada por la núm. 493 de 1946 (pág. 1475), en relación con la Orden Administrativa núm. 8 promulgada por el Administrador General de Suministros el día 8 de septiembre de 1942, tal como ha sido enmendada y ampliada, porque allá por el día 31 de julio de 1946 y en el pueblo de Rincón, "vendió a Gregorio Rodríguez Vargas, dos libras de arroz a razón de 17 centavos libra, *y al ser requerido para ello se negó a dar una factura sobre dicha venta, vendiendo dichas dos libras de arroz sin factura, . . ."* (Bastardillas nuestras.)

El día señalado para el juicio el acusado presentó una excepción perentoria que fué declarada sin lugar y luego de oír la prueba aducida por El Pueblo y por el propio acusado, la corte inferior declaró a éste culpable del delito imputádole y lo sentenció a sufrir un año de cárcel y a pagar $1,000 de multa, más las costas. No conforme, el acusado ha apelado ante nos.

Según se habrá visto, la médula de la acusación es que Santos Altieri vendió a Gregorio Rodríguez Vargas dos libras de arroz y que al ser requerido para que diera una factura sobre dicha venta se negó a ello. Teniendo esto en mente proseguiremos con nuestra opinión.

En el alegato radicado el acusado señala ocho errores. Discutiremos éstos en el orden en que han sido presentados.

Sostiene primeramente que la corte inferior cometió error al condenarle por violación de las órdenes números 8 y 84 dictadas por el Administrador General de Suministros, sin que se hubiese probado por El Pueblo que éstas habían sido publicadas en un periódico de general circulación en la Isla de Puerto Rico. Carece de méritos este error, ya que se ha resuelto que "en proceso por infracción a un regla-

mento que, aprobado por un funcionario del Gobierno, tiene fuerza de ley, el Fiscal no viene obligado a presentar prueba de su publicación. Al acusado que impugne su validez por no haberse publicado conforme a ley tiene el peso de probar su nulidad." *Pueblo* v. *Sanjurjo*, 58 D.P.R. 649, 652.

■ Insiste inmediatamente después el acusado en que la referida corte erró al declararle culpable, toda vez que la prueba presentada no era suficiente para sostener la sentencia. Es innegable que de la prueba aducida por las partes surgió un conflicto, pero éste fué dirimido por la corte inferior y nada hay en los autos que nos convenza de que al así hacerlo ella cometiera manifiesto error o actuara movida por pasión, prejuicio o parcialidad. Véanse *Machuca* v. *Autoridad Fuentes Fluviales*, 66 D.P.R. 182 y *Rivera* v. *López*, 66 D.P.R. 210.

■ Alega además el apelante que la corte inferior cometió error al condenarlo, toda vez que por no saber él leer y escribir estaba imposibilitado de extender una factura de venta. Tampoco le asiste la razón a este respecto. La Orden Administrativa núm. 8 (*Exhibit* A de El Pueblo), emitida por el Administrador General de Suministros en 8 de septiembre de 1942, prohibe de manera absoluta a "*todo comerciante, sea* importador, *mayorista* intermediario, o detallista, . . . (1) *Vender sin factura.*" Según esa orden fué ampliada por la núm. 84 de 30 de julio de 1946 "las prácticas prohibidas de vender sin factura *obligan a todo comerciante* o industrial, *sea mayorista,* comisionista, intermediario *o detallista, a dar una factura clara y terminante* en donde se haga constar la cosa vendida, el precio sobre unidad y el valor total," así como "*a dar una factura o 'ticket' al comprador consumidor cuando éste lo requiera,* haciendo constar igualmente la cantidad vendida, el precio por unidad y el valor total, sin que en ningún modo pueda especificarse el valor total sin indicación clara de peso o unidad y el valor de cada unidad. . ." (Bastardillas nuestras.) La referida Or-

den núm. 8, según ha sido ampliada, no dice en forma alguna que la misma sea aplicable tan sólo a aquellos comerciantes, mayoristas o detallistas que sepan leer y escribir. No hace ella excepción de clase alguna a este respecto, y el hecho de que el acusado Santos Altieri fuese un pequeño detallista, que no supiese escribir o de que tan sólo supiera leer y escribir algunos números no le releva de la obligación de dar cumplimiento a lo provisto. *Ubi lex non distinguit, nec non distinguere debemus.* Si se resolviera que las disposiciones de órdenes como la que nos ocupa han de aplicarse tan sólo a comerciantes que sepan leer y escribir, las mismas fácilmente se convertirían en una burla a la justicia.

La cuestión suscitada en el cuarto señalamiento ya ha sido claramente resuelta adversamente al apelante en varios casos de este mismo Tribunal. En el de *El Pueblo* v. *Arce,* resuelto por este Tribunal en 23 de abril de 1947, ante, pág. 253, dijimos, por ejemplo, que "es incuestionable que existen ciertas facultades que el poder legislativo puede delegar en favor de determinado funcionario o Junta Administrativa"; que "la ley de manera clara y taxativa autoriza al Administrador General de Suministros a aprobar reglas y reglamentos"; que "de acuerdo con la facultad conferídale el Administrador de Suministros procedió a aprobar con fecha 8 de septiembre de 1942 la Orden Administrativa núm. 8," y que "la facultad de aprobar reglas y reglamentos se delega con el fin de que la ley se implemente y se haga más viable." También manifestamos que "al hacer figurar en su Orden Administrativa núm. 8 que queda prohibido el negarse a vender un artículo que un comerciante tenga en existencia si no se le compran otros artículos que el adquirente no interesa o no necesita, el Administrador no hizo otra cosa que implementar la Ley núm. 228, según fué enmendada, para hacer cumplir los propósitos y fines de la misma." En términos similares podemos expresarnos en relación con aquella parte de la Orden núm. 8, según fué

ampliada en 1946, que prohibe y castiga el vender sin factura al ser requerido para ello por el comprador-consumidor. (En este caso la prueba demostró que el niño que compró las dos libras de arroz las adquirió para su tío y padre de crianza, en cuya casa el comía y vivía. El niño fué, pues, no sólo el comprador del arroz sí que también uno de los consumidores del mismo.)

También alega el acusado que las órdenes 8 y 84 ''son nulas por no expresarse en ellas una determinación de hechos que justifiquen su promulgación, habiéndose así privado al acusado de un debido procedimiento de ley.''

Si se examina la Ley núm. 228 de 12 de mayo de 1942 (pág. 1269) según fué enmendada por la número 493 de 29 de abril de 1946 (pág. 1475) se notará inmediatamente que bajo los artículos 2(c), 3(a) y (c) se autoriza expresamente al Administrador de Suministros para dictar aquellas reglas y órdenes que crea necesarias para poner en vigor sus disposiciones. Al autorizársele bajo el artículo 3(a) a emitir tales reglas y órdenes, se hace constar de manera clara y terminante que ''toda regla u orden emitida en consideración de las anteriores disposiciones *de este inciso,* será acompañada de una declaración expresiva de las causas envueltas en su emisión.'' El inciso (a) del artículo 3 faculta al Administrador a ''mediante reglas u órdenes, establecer aquellos precios máximos o beneficios máximos que en su criterio sean generalmente justos y equitativos y que pongan en vigor los propósitos de esta Ley.'' Empero, en este caso no se trata de una violación a una regla u orden del Administrador fijando precios máximos a determinados productos, sino que se trata incuestionablemente de una orden dictada en armonía con el artículo 3(c) de la Ley. Decimos esto, a pesar de que en las propias órdenes se hace constar que ellas son emitidas ''a virtud de las facultades que le confiere el artículo 3 inciso (d).'' Ello no altera en forma alguna la conclusión a que llegamos. Según el inciso (e) de dicho artículo ''Las

órdenes, reglas y reglamentos dictados bajo esta Ley podrán contener todas aquellas disposiciones que el Administrador crea necesarias para evitar la evasión de los mismos.'' Ora se trate de una orden dictada bajo el inciso (*c*) o bajo el inciso (*d*) del artículo 3 de la Ley núm. 228 (decimos esto asumiendo que bajo el inciso (*d*) el Administrador pudiera dictar reglas u órdenes), la estricta realidad es que tan sólo bajo el artículo 3(*a*) es que se requiere que ''toda regla u orden emitidas'' estableciendo precios o beneficios máximos ''será acompañada de una declaración expresiva de las causas envueltas en su emisión.'' Si al facultar la ley al Administrador de Suministros para promulgar reglas u órdenes como la aquí envuelta se hubiera exigido tal ''declaración expresiva de las causas envueltas en su emisión,'' no hay duda de que asistiría la razón al acusado. Véanse *Wichita R.R.* v. *Pub. Util. Comm.*, 260 US. 48, 58; *Mahler* v. *Eby,* 264 U.S. 32, 45 y *Panama Refining Co.* v. *Ryan,* 293 U.S. 388, 432. No obstante, repetimos, para la emisión de la orden aquí en disputa, no era necesaria una determinación de hechos. Lo anterior ha sido expresado no obstante creer nosotros que la Orden núm. 8 contiene expresamente ''una declaración expresiva de las causas envueltas en su emisión'' al hacerse constar en el párrafo inicial de la misma que ''El Administrador General de Suministros de Puerto Rico por la presente determina que existe en nuestro comercio insular una serie de prácticas especulativas y de manipulación que, en su criterio, equivalen a propender el alza injustificada de precios y que son inconsistentes con los fines de la Ley núm. 228 de mayo 12, 1942.''

El sexto señalamiento carece igualmente de méritos, siendo éste al efecto de que la corte inferior ''erró al declarar culpable al acusado por violación de órdenes del Administrador General de Suministros que son nulas debido a haberse promulgado por delegación y ser *ex post facto.*'' Ya hemos indicado que la Ley núm. 228 de 1942, según ha

sido enmendada, faculta de manera palmaria al Administrador de Suministros a aprobar reglas y órdenes. También hemos dicho que tal delegación es constitucional. En la acusación se alega que Santos Altieri allá por el 31 de julio de 1946 vendió a Gregorio Rodríguez Vargas 2 libras de arroz, negándose a dar a éste una factura sobre dicha venta, al ser requerido para ello. El delito se cometió, en su consecuencia, en 31 de julio de 1946. Habiéndose emitido la Orden núm. 8 en 8 de septiembre de 1942 no puede decirse que en lo que al acusado concierne dicha Orden resulta ser ex post facto. El hecho de que la Orden núm. 8 fuera ampliada en 30 de julio de 1946 tampoco la convierte en ex post facto, ya que la orden posterior tuvo vigencia inmediata y empezó a publicarse en dicho día. El artículo 3(a) que requiere "que dichas reglas u órdenes serán publicadas por el Administrador en uno o más periódicos de general circulación en la Isla, por tres (3) días consecutivos," se refiere exclusivamente a las reglas dictadas a tenor con el artículo 3(a) a que ya hemos hecho mención y que faculta al Administrador para fijar precios y beneficios máximos. Nada hay en la Ley que exija que las demás reglas u órdenes dictadas en armonía con la misma sean publicadas por determinado período de tiempo antes de que las mismas puedan ser efectivas.

No vemos cómo pueda sostenerse con visos de razón que el delito, según la acusación, estaba prescrito. Ésta alega que el delito se cometió el 31 de julio de 1946 y ella fué presentada el 7 de agosto del mismo año. "La acción penal por cualquier *misdemeanor* deberá entablarse dentro del año de su comisión." (Art. 79 del Código Penal.) Y en este caso la acusación, según ya hemos indicado, se radicó 7 días después de haberse cometido el delito.

El último error señalado es al efecto de que la Corte de Distrito de Aguadilla erró al imponerle al acusado la pena excesiva de un año de cárcel y mil dólares de multa. No existe tal error. Las Órdenes Administrativas núms. 8 y

84 proveen que la violación de alguna de sus disposiciones será castigada por cada ofensa con una multa no mayor de $5,000 y cárcel por no menos de 3 meses ni más de 2 años. Sin embargo, no apareciendo nada en los autos que justifique la pena severa impuesta y tomando en consideración que el acusado en este caso es un detallista en pequeña escala, que no sabe leer ni escribir, *la sentencia apelada será modificada en el sentido de imponerle tan sólo 3 meses de cárcel y $100 de multa, más las costas, y así modificada será confirmada.*