El Pueblo de Puerto Rico, demandante y apelado, *v.* Rafael Calero Pelegrina, acusado y apelante.

Núm. 12365.—*Sometido.*—Diciembre 5, 1947. *Resuelto:* Marzo 5, 1948.

*Héctor Reichard* y *Benicio Sánchez Castaño,* abogados del apelante; *Hon. Procurador General Luis Negrón Fernández* y *J. Rivera Barreras* y *Alberto Picó Santiago, Fiscal* y *Fiscal Auxiliar del Tribunal Supremo,* respectivamente, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué sentenciado a un año y medio de cárcel y $5,000 de multa por infracción a la Ley de Suministros.

El señalamiento de errores va dirigido, en primer término, contra dos resoluciones de la corte inferior: (*a*) la que permitió al fiscal presentar una segunda acusación luego de haberse ordenado el sobreseimiento de la primera; y (*b*) la que lo autorizó para enmendar la segunda, después de haber sido leída al acusado, pero antes de que éste formulase su alegación.

La primera acusación fué radicada el 31 de julio de 1946, pero advirtiendo el fiscal al ser llamado el caso para juicio, que la acusación no expresaba el lugar donde se cometió el delito, con el fin de corregirla, solicitó su sobreseimiento, a menos que la defensa no objetase a la enmienda. La defensa manifestó que no se oponía al sobreseimiento y la corte lo ordenó. Inmediatamente el fiscal, dirigiéndose a la corte, dijo: ''Entonces, Sr. Juez, con la venia de la corte,

el fiscal solicita permiso del tribunal para radicar acusación en el caso de El Pueblo v. Rafael Calero Pelegrina, por infracción a la Ley de Suministros. El fiscal jura y radica en corte abierta esta acusación." Acto seguido el juez dictó la siguiente resolución: "Se admite la radicación de esta acusación. Estando el acusado presente vamos a darle lectura a la acusación."

La defensa pidió que antes de procederse a la lectura de la nueva acusación, se le concediese un plazo de dos días por lo menos, para oponerse a su radicación. Como fundamento de su solicitud, alegó que tratándose de un *misdemeanor,* el sobreseimiento de la primera acusación impedía la radicación de la segunda. Esta moción fué denegada procediéndose a la lectura de la acusación. La defensa solicitó entonces un término de cinco días para formular su alegación. Le fué concedida una hora solamente, considerando que las dos acusaciones, la primera y la segunda eran iguales con excepción del lugar donde se cometió el delito, el cual no aparecía en la primera. Llamado de nuevo el caso y antes de que el acusado formulase su alegación, el fiscal descubrió que en la segunda acusación no se exponía la fecha de la comisión del delito. Solicitó entonces que se le permitiese enmendarla insertando la fecha, o sea el 31 de julio de 1946. Ordenó el juez que el fiscal dictara la enmienda y determinara el sitio donde debía insertarse. Lo hizo el fiscal y la corte dictó inmediatamente la siguiente resolución: "La corte admite la enmienda. La acusación se da por enmendada en el sentido solicitado por el Señor Fiscal, y como la enmienda ha sido dictada en corte abierta por el Fiscal la misma ha sido oída por el acusado y los abogados defensores y está el caso en condiciones de hacerse alegación por el acusado."

I

Discutiremos, en primer lugar, si erró la corte a quo al admitir la segunda acusación. El apelante cita los ar-

tículos 451 y 452 del Código de Enjuiciamiento Criminal(¹) para sostener que el sobreseimiento de la primera acusación impide la radicación de la segunda.

No tratándose de un sobreseimiento bajo los artículos 448 *et seq.* del Código de Enjuiciamiento Criminal, no es de aplicación el artículo 452 de ese Código. Ese artículo por sus propios términos, está limitado a los sobreseimientos bajo el Capítulo VI del Título XI del citado Código.(²) *García de Quevedo v. Corte,* ante, pág. 22; *Pueblo v. Muñoz,* 57 D.P.R. 218, 222. En verdad, difícil es concebir que por el hecho de que el fiscal, por inadvertencia o de otro modo, incurriera en errores de esta índole al redactar la acusación, el delito misdemeanor quedase impune por no poderse radicar una acusación enmendada, a menos que el propio acusado, actuando en tal caso contra su propio interés, interpusiese una excepción perentoria contra la defectuosa acusación. Por ese motivo, hemos resuelto que la situación que se produce cuando el fiscal solicita el sobreseimiento para presentar acusación enmendada, es igual a la que surge cuando, declarada con lugar la excepción perentoria, la corte ordena que se presente una nueva denuncia o acusación, siempre que, como en este caso, no se varíe el delito imputado en la acusación o denuncia original. *Pueblo v. Muñoz,* supra.

Pero la defensa no descansa exclusivamente en el artículo 452. Para el caso de que resolviéramos que ese ar-

(¹)Los artículos 451 y 452 del Código de Enjuiciamiento Criminal prescriben:

"Artículo 451.—El tribunal, ya por su propio acuerdo o ya a petición del fiscal y en pro de la justicia, puede decretar el sobreseimiento de una causa o de una acusación. Las causas de sobreseimiento deben exponerse en el auto que al efecto se dicte, el cual se insertará en el acta del proceso.

"Artículo 452.—Un auto para el sobreseimiento de una causa, según lo prescrito en este capítulo, imposibilita la formación de otro proceso por el mismo delito, si éste es un *'misdemeanor'* (delito menos grave); pero no así cuando el delito es un *'felony'* (delito muy grave.)"

(²)Este Capítulo comprende los artículos 448 al 452, inclusives.

tículo no era aplicable, invocó el 157 (³) del referido Código. Arguye que de conformidad con este último, la segunda acu-, sación debía desestimarse porque al decretar el sobresei-miento de la primera, la corte no ordenó la radicación de la segunda. En apoyo de su tesis, la defensa cita el caso de *Ex parte Williams,* 48 Pac. 499 (Cal. 1897). En dicho caso la corte a quo declaró con lugar una excepción peren-toria "con permiso al fiscal para radicar una nueva acusa-ción." En una solicitud de hábeas corpus presentada por Williams ante la Corte Suprema de California, alegó que de conformidad con el artículo 1008 del Código Penal de aquel Estado—sustancialmente igual al 157 de nuestro Có-digo de Enjuiciamiento Criminal—no habiéndose ordenado al fiscal radicar nueva acusación, era imperativo dar por terminado el proceso y poner en libertad al acusado, no bas-tando que la corte meramente diese *permiso* para radicar la nueva acusación.

Interpretando el artículo 1008 del Código Penal, aquella corte resolvió que dicho artículo claramente contempla que la radicación de una nueva acusación después de declararse con lugar una excepción perentoria, es una cuestión que des-cansa en la discreción de la corte, no en la del fiscal; que la nueva acusación debe radicarse a virtud de la orden de la corte; que en aquel caso, en vez de haberse hecho así, la corte, sin autoridad legal, dió permiso al fiscal para que la radicase, dejando la decisión de radicarla o no entera-mente a la discreción de dicho funcionario; que bajo una orden de la corte disponiendo la radicación de una nueva acusación, si el fiscal deja de radicarla, incurre en respon-

(³) El artículo 157 del Código de Enjuiciamiento Criminal prescribe:
"Si se admitiere la excepción, esto constituirá sentencia definitiva respecto a la acusación impugnada, y excluirá la formación de otro proceso por el mismo delito, a no ser que a juicio del tribunal, la objeción en cuya virtud fuere admitida la excepción perentoria, pudiera evitarse mediante nueva acusación, y ordenare la presentación de ésta; *Disponiéndose,* que después de la orden para una nueva acusación, podrá el reo ser examinado por un juez de paz, y puesto en libertad o reducido a prisión, como en los demás casos."

sabilidad y puede castigársele en consecuencia; que por el contrario, bajo una orden permisiva, si el fiscal nunca radica la nueva acusación, no falta a ningún deber y no está sujeto a castigo. Y entendiendo la Corte Suprema que la orden dictada por la corte inferior en relación con la nueva acusación era meramente permisiva y no mandatoria, resolvió que había sido dictada sin autoridad legal, por lo cual declaró con lugar la petición de hábeas corpus y decretó la excarcelación del peticionario.

En el año 1911 volvió a suscitarse la misma cuestión ante la Corte Suprema de California en el caso de *Ex parte Hughes,* 117 Pac. 437, (Cal. 1911). Se presentó una nueva acusación contra Hughes a virtud de una resolución que al declarar con lugar una excepción perentoria, decía que la corte "era de opinión que debería presentarse una nueva acusación que evitase la objeción y que fuese suficiente en todos respectos". Hughes presentó en la Corte Suprema de California una solicitud de hábeas corpus, fundándola, precisamente, en que la resolución de la corte inferior no ordenaba, sino que permitía al fiscal presentar la nueva acusación y se invocó el caso de *Ex parte Williams,* (Cal.), supra. Al desestimar la petición de hábeas corpus se expresó así el Tribunal:

"Aquí hubo el ejercicio del poder judicial que como se ha dicho, la ley contempla lo ejercite la corte y no el fiscal. Este poder judicial, habiendo sido en realidad ejercitado por la corte, se ha demostrado un cumplimiento sustancial con el estatuto. Por consiguiente, se anula el auto y el peticionario volverá a la prisión."

Como podrá verse, el hecho de haber dicho la corte inferior que una nueva acusación *debería radicarse* fué interpretado por la Corte Suprema como equivalente al ejercicio de discreción por la corte y diferenció aquel caso del de *Williams,* (Cal.), supra.

El caso ante nos es distinto del de *Ex parte Williams,* (Cal.), supra. En este último, simplemente se concedió per-

miso al fiscal para radicar una nueva acusación. Este funcionario fué facultado para usar su discreción en cuanto a si la radicaba o no. En el caso de autos el fiscal, quien había solicitado el sobreseimiento con el objeto de presentar la nueva acusación, en el instante de decretarse el sobreseimiento solicitó permiso para radicarla y así lo hizo. Acto seguido la corte dictó la siguiente orden: "Se admite la radicación de esta acusación. Estando el acusado presente vamos a darle lectura a la acusación". Esta orden constituye más que un mero permiso. La corte, conociendo la nueva acusación, ejercitó su discreción al permitir que fuera radicada. De ese modo sustancialmente cumplió con el artículo 157 del Código de Enjuiciamiento Criminal. En el caso de autos la posición del fiscal es más fuerte que en el de *Ex parte Hughes,* supra. Allí la corte a quo se limitó a expresar que en su opinión, *debería* radicarse una nueva acusación. Aquí, conocida la acusación, la corte opinó que debía admitirla y ordenó, que estando presente el acusado, se procediese a su lectura.

Una situación similar a la del caso de autos surgió en la Corte Suprema de Nevada en *Ex parte Williams,* 186 Pac. 673 (Nev. 1920). Allí Williams presentó una execpción perentoria que fué declarada con lugar. El fiscal, anticipando el resultado, había preparado una nueva acusación y al declararse con lugar la excepción perentoria, pidió permiso a la corte para presentarla y le fué concedido. El abogado del acusado solicitó entonces que se desestimase la nueva acusación, basándose en que había sido radicada sin autoridad legal. Oídas las partes, la moción de la defensa fué denegada. El acusado radicó una petición de hábeas corpus en la Corte Suprema de Nevada alegando que se hallaba ilegalmente privado de su libertad, toda vez que la corte, al declarar con lugar la excepción perentoria, había *permitido,* pero no *ordenado,* que se radicase una nueva acusación. Invocó el artículo 7101 de las Leyes Revisadas de

Nevada de 1912, el cual es sustancialmente igual al artículo 157 de nuestro Código de Enjuiciamiento Criminal. Alegó que, si bien la corte podía *ordenar* que se radicase una nueva acusación, no tenía jurisdicción para *conceder permiso* al fiscal para radicarla y citó, entre otros, el caso de *Ex parte Williams* (Cal.) supra. La Corte Suprema de Nevada, al desestimar la petición de hábeas corpus, diferenció el caso de *Williams* (Cal.) supra, del de *Williams,* (Nev.) supra, en los siguientes términos:

"En el caso de autos el fiscal, anticipando que la excepción perentoria contra la primera acusación sería sostenida, preparó una nueva acusación que tenía en corte cuando la orden sosteniendo la excepción perentoria fué dictada e inmediatamente pidió permiso para radicarla, el cual le fué concedido, y la acusación fué inmediatamente presentada y examinada por la corte, mientras que en el caso de California, la excepción perentoria fué declarada con lugar con permiso al fiscal para radicar una nueva. Hasta donde resulta de la opinión en el caso de Williams [Cal.] el fiscal no manifestó entonces deseo alguno de radicar la nueva acusación. El razonamiento de la corte en aquel caso no es de aplicación a la situación prevaleciente en el de autos. Allí se dijo que la orden dictada tuvo el efecto de transferir el deber de decidir; que si el fiscal hubiera dejado de actuar, si se le hubiera ordenado radicar una nueva acusación, hubiera incurrido en responsabilidad, pero que si hubiera rehusado actuar bajo una orden permisiva, no hubiera habido tal responsabilidad—todo lo cual es indudablemente cierto."

El caso de *Williams* (Nev.), supra, no puede diferenciarse del de autos.

Es verdad que en el caso de *García de Quevedo* v. *Corte,* supra, se aplicó la doctrina de *Ex parte Williams* (Cal.), supra. En el de *García de Quevedo,* supra, la corte de distrito, al declarar con lugar la excepción perentoria y desestimar las dos acusaciones el 27 de febrero de 1947, nada dispuso con respecto a la radicación de nuevas acusaciones. El 30 de abril de 1947 el fiscal, ejercitando su propia discreción, sin intervención de la corte radicó dos nuevas acusaciones. Fué entonces que el peticionario solicitó su sobreseimiento, fundándose en que, declarada con lugar una ex-

cepción perentoria, no procede la radicación de una nueva acusación, a menos que la corte así lo *ordene,* y que en dicho caso no se había ordenado. La corte de distrito declaró sin lugar la moción del acusado diciendo, en parte, que " . . . siendo éste un caso en que no prescribe el delito por ser uno contra el erario público, es de justicia dictar, como por la presente dicta una orden cuyos efectos se retrotraigan al día en que dictó. la resolución ordenando el archivo del caso por falta de causa de acción concediéndole *permiso* al fiscal para radicar nueva acusación." (Bastardillas nuestras.)

Este Tribunal, siguiendo el caso de *Ex parte Williams* (Cal.), supra, resolvió que suponiendo que una orden *nunc pro tunc,* como la dictada en el caso de *García de Quevedo,* supra, pudiera dictarse, dicha orden no cumplió con los requisitos del artículo 157 del Código de Enjuiciamiento Criminal, y agregó: "El estatuto exige específicamente que la corte ordene y no que permita al fiscal que radique una nueva acusación. La teoría es que la corte debe ejercitar su propio criterio y no dejar la cuestión de si se radica o no una nueva acusación a la discreción del fiscal. Por tanto, la resolución debe contener un lenguaje mandatorio más bien que permisivo."

Inmediatamente veremos que el caso de *García de Quevedo,* supra, es distinto del de autos. El efecto legal de la orden *nunc pro tunc* fué conceder *permiso* al fiscal para radicar una nueva acusación, la cual se retrotraería a la fecha en que declaró con lugar la excepción perentoria. Y esto contraviene lo dispuesto en el artículo 157 del Código de Enjuiciamiento Criminal y es contradictorio con la doctrina del caso de *Ex parte Williams* (Cal.), supra.

No erró, pues, la corte de distrito, al denegar en el caso de autos la moción para que se desestimase la segunda acusación. *Ex parte Hughes,* supra; *Ex parte Williams* (Nev.), supra.

## II

■■ Pasemos ahora a determinar si erró la corte de de distrito al permitir que la nueva acusación fuese enmendada para insertarle la fecha de la comisión del delito. Ya hemos dicho que la resolución dictada en este caso tuvo el efecto de ordenar la radicación de la nueva acusación. Radicada ésta el 6 de agosto de 1946, el derecho a enmendarla surgió del artículo 158 del Código de Enjuiciamiento Criminal.(⁴) Existe marcado contraste entre los artículos 157 y 158: El primero requiere una orden—no un mero permiso—para que pueda radicarse nueva acusación después de sostenida la excepción perentoria; el segundo, sólo exige un mero *permiso* para enmendar una acusación o denuncia ya radicada. *García de Quevedo v. Corte,* supra.

En el presente caso la corte concedió el permiso para enmendar la segunda acusación. El próximo paso debe ser determinar si la enmienda insertada varió el delito imputado en la acusación original. Si lo varió, tendríamos que resolver que carecía la corte de jurisdicción para permitir la enmienda. Monografías en 7 A.L.R. 1516; 68 A.L.R. 928. Pero en este caso la fecha no es un elemento esencial del delito. Si bien es necesaria para determinar la prescripción, este Tribunal ha resuelto repetidamente que en los casos criminales la prescripción es materia de defensa y como tal, debe ser alegada y probada por el acusado. *Pueblo v. Delgado,* 32 D.P.R. 75, 76; *Morera v. Corte,* 55 D.P.R. 742, 743. *Cf. Pueblo v. Serrano,* 66 D.P.R. 454.

No erró la corte de distrito al permitir la enmienda a la nueva acusación.

---

(⁴)El artículo 158 del Código de Enjuiciamiento Criminal prescribe:

"Si el tribunal no *permitiere* que se modifique la acusación, ni ordenare la presentación de otra, deberá ponerse en libertad al reo, si estuviere bajo custodia; si se hallare en libertad bajo fianza personal, ésta quedará extinguida, devolviéndosele el depósito, si fuere pecuniaria." (Bastardillas nuestras.)

## III

 Procede, en orden lógico, determinar si erró la corte de distrito al desestimar la excepción perentoria a la acusación original. La excepción fué predicada en fundamentos distintos de los que ahora se alegan en apelación. La corte de distrito la desestimó. Ahora el apelante funda la excepción en que la acusación no alega: (*a*) que el arroz es un artículo de primera necesidad; (*b*) que el acusado es un comerciante a quien, como tal, es aplicable la Orden Administrativa; y (*c*) que el comprador Faustino Fantauzzi es un "consumidor", quien como tal, puede exigir la factura o *ticket* a que se refiere dicha Orden.

La Orden Administrativa núm. 8, según fué enmendada por la núm. 84, obliga "a todo comerciante o industrial, sea mayorista, comisionista, intermediario o detallista, a dar una factura clara y terminante en donde se haga constar *la cosa vendida, el precio sobre unidad* y el *valor total*". (Bastardillas nuestras.) La Orden Administrativa obliga a todo detallista a dar una factura o ticket y ordena a todo "consumidor" a quien el detallista negare la factura o ticket de su compra, "a formular una queja o denuncia ante . . . la policía o jueces . . ."

Concedemos que la acusación habría sido más específica si hubiese alegado que el acusado era un comerciante. Pero el acusado no tuvo a bien solicitar esa especificación. Debemos presumir que la corte hubiese accedido a concederla. *Pueblo* v. *Rivera,* 54 D.P.R. 363. De negarse a ello y demostrarse que los derechos sustanciales del acusado fueron, con tal motivo, perjudicados, la negativa hubiera sido causa de revocación.

Nada decimos sobre la circunstancia de no alegarse que el comprador era un "consumidor" porque no tenemos duda de que el Administrador no tuvo la intención de conceder exclusivamente al "consumidor" el derecho a exigir la fac-

tura. A nuestro juicio, la palabra "consumidor", como se usa en la Orden Administrativa, incluye a todo comprador, pues la mayoría de las veces el que en definitiva consume el artículo se vale' de algún intermediario para adquirirlo y de darle la interpretación restringida que propugna el apelante, el propósito perseguido al exigir la factura quedaría frustrado en tales casos. Ésa, repetimos, no pudo ser la intención del Administrador. De todos modos, la acusación informó al acusado que había vendido un saco de arroz sin dar factura, que es la esencia del delito. En el caso de *Pueblo* v. *Santos,* 67 D.P.R. 650, donde no se alegó que el arroz fuese un artículo de primera necesidad; que el vendedor fuera comerciante ni que el comprador fuera consumidor, se decidió que era suficiente una acusación en la cual se imputó haber vendido dos libras de arroz negándose a dar factura sobre la venta.

Dentro de las circunstancias de este caso, los motivos en que está predicada la excepción perentoria no justifican la revocación de la sentencia.

## IV

Se queja el apelante de que la corte inferior no le concedió tiempo razonable para preparar su defensa. Según la acusación, el delito se cometió el 31 de julio de 1946. Ese mismo día se presentó la acusación original y el 6 de agosto siguiente se celebró el juicio. Los autos revelan que la controversia de hecho era la de si el acusado había vendido un saco de arroz y si había rehusado dar la correspondiente factura. Si el acusado no vendió el arroz o en caso de haberlo vendido, si dió factura, en los seis días que transcurrieron entre la radicación de la acusación y la celebración del juicio, tuvo tiempo suficiente para preparar su prueba. Es más, el acusado no ofreció evidencia para controvertir la del fiscal.

## V

■ El apelante señala como error el hecho de que los procedimientos en este caso se instaron a iniciativa del fiscal. Alega que, de conformidad con el artículo 13(b) de la Ley Insular de Suministros, según fué enmendada por la núm. 493 de 29 de abril de 1946 (pág. 1475), debió el Administrador certificar los hechos al Procurador General, quien, en su discreción, pudo entonces instituir los procedimientos adecuados. En efecto, ese artículo en lo pertinente, dispone:

"Cuando el Administrador crea que alguna persona está sujeta a castigo bajo las disposiciones de este inciso certificará los hechos al Procurador General quien, a su discreción, instituirá los procedimientos adecuados."

El artículo no excluye necesariamente el deber que al Procurador General y sus auxiliares los fiscales, impone el artículo 64 del Código Político(5) de perseguir, de su propia iniciativa, todo delito que se cometa contra las leyes de Puerto Rico. No pudo ser la intención legislativa complicar y hacer más dilatoria la administración de justicia en los procesos por infracción a esta Ley, la cual, por su naturaleza, requiere acción rápida para reprimir el mal que se propuso conjurar. Sería necesario, por lo menos, un lenguaje más específico para que pudiéramos interpretar que fué la intención de la Legislatura en infracciones contra la Ley Insular de Suministros, limitar las facultades del Procurador General y sus auxiliares a aquellas infracciones que le fueren certificadas por el Administrador. Este funciona-

---

(5)El artículo 64 del Código Político en lo pertinente, prescribe:

"El Attorney General representará a El Pueblo de Puerto Rico, bien personalmente, o por medio de sus auxiliares o cualquiera de los Fiscales de distrito, en todas las demandas y procesos civiles o criminales, en que fuere parte; . . . *Disponiéndose, sin embargo,* que los procesos criminales, excepto como queda establecido en el artículo 74 del Código Político, serán promovidos por el Fiscal del respectivo tribunal, sin especial autorización del Attorney General; pero en todos estos casos el Attorney General podrá intervenir en interés del público."

rio así interpretó el artículo 13(b) en su Orden Administrativa núm. 84 al disponer que toda persona que se considerase agraviada por alguna práctica especulativa y todo consumidor a quien el detallista negare un ticket de su compra consignando la cantidad exacta comprada, el valor por unidad y el valor total pagado, deberá formular una queja o denuncia ante—entre otros funcionarios—la policía o jueces.

Opinamos que esa disposición es meramente directiva y no mandatoria o preceptiva.

## VI

El apelante sostiene que la corte de distrito erró en la apreciación de la prueba. La del fiscal—el acusado no presentó prueba—consistió en el testimonio de Faustino Fantauzzi y en el del Fiscal Willis Ramos. El primero declaró que el 31 de julio de 1946 fué a la tienda del acusado en el barrio Haguey, de Aguadilla, para comprarle un saco de arroz; que le pidió la factura, contestándole aquél que no podía dársela, pero que le entregaría un papel para que fuese a su casa, donde su esposa le entregaría el saco de arroz; que fué a la casa del acusado, mostró a la esposa de éste el papel y ella le entregó el arroz. El segundo declaró que mientras practicaba la investigación de este caso el acusado le manifestó que no había entregado factura y que no tenía facturas impresas. El fiscal presentó en evidencia el papel([6]) y las Ordenes Administrativas números 8 y 84. El papel no es una factura, pues no reúne los requisitos exigidos por la Orden Administrativa núm. 84 en cuanto a la descripción del artículo vendido, el precio sobre unidad y el valor total. Simplemente se trataba de una orden para la entrega de un artículo que no se describía. La evidencia es suficiente para sostener la acusación.

---

([6])El papel dice así:

"Llille: Dale un saco al portador. Rafael."

## VII

Por último, se queja el apelante de que la sentencia es excesiva. La pena que dispone la Ley Insular de Suministros en su artículo 13(b), según fué enmendado por la Ley núm. 493 de 29 de abril de 1946, es: multa que no excederá de $5,000 y cárcel por un término no menor de tres meses ni mayor de dos años, y en aquellos casos en que la violación sea de una escala de precios, se impondrá una multa adicional equivalente a tres veces la cantidad envuelta en el negocio prohibido.

En el caso de *Pueblo* v. *Arce,* 67 D.P.R. 253, la infracción consistió en negarse a vender 48 sacos de arroz—a pesar de tener en existencia suficiente cantidad de ese artículo—si no se le compraban también otros artículos, tales como maíz, papas, etc. La sentencia de la corte de distrito fué dos años de cárcel y $5,000 de multa, más las costas. Este Tribunal resolvió que era excesiva y la redujo a cuatro meses de cárcel, $1,000 de multa y costas. Y en el de *Pueblo* v. *Santos,* supra, donde la infracción consistió en haber vendido dos libras de arroz a diez y siete centavos libra y negarse a dar una factura, la misma corte de distrito le impuso un año de cárcel y $1,000 de multa, más las costas. Este Tribunal también la redujo, por excesiva, a tres meses de cárcel y $100 de multa, más las costas.

Consideradas las circunstancias concurrentes somos de opinión que la sentencia apelada es excesiva. Procede reducirla a tres meses de cárcel, $300 de multa más las costas. *Así modificada se confirma.*