EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO MILLÁN CARRIÓN, acusado y apelante.

Núm. 14227.—*Sometido:* Mayo 2, 1950. *Resuelto:* Mayo 23, 1950.

*Diego O. Marrero* y *Federico Valladares,* abogados del apelante;
*Hon. Procurador General Vicente Géigel Polanco (José C.
Aponte, Procurador General Interino,* en el alegato) y *J. Ri-
vera Barreras, Fiscal del Tribunal Supremo,* abogados de El
Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opi-
nión del tribunal.

El aquí apelante fué convicto por un jurado de un delito
de hurto mayor habiendo sido subsiguientemente sentenciado
a una pena de uno a diez años de presidio. En apelación,
dos son los errores que señala: (1) que el veredicto fué con-
trario a la prueba, y (2) que fué error del tribunal inferior
prescindir de hacer el resumen de la prueba.

La prueba de cargo, según correctamente la resume
el Fiscal de este Tribunal en su alegato, fué la siguiente:

"*Mario González Molina,* declaró que vive en la Calle Barto-
lomé las Casas núm. 624, Villa Palmeras, y trabaja en la em-
presa de taxis 'Majestic Taxi Cabs' como chófer; que el día 18
de julio de 1948 salió para la casa de su hermano sita en el
Barrio Buenos Aires, Pda. 26½ de Santurce; que eran como
las doce menos cuarto de la noche; que al bajar por la parada
26½ se encontró con el acusado Pedro Millán Carrión quien lo

llamó y le pidió que le pagara un palo de ron (pág. 3–4 T.E.) ;
que el acusado insistió en que le pagara el palo a lo que él accedió
diciéndole que se lo pagaba pero que se iba enseguida y entra-
ron a un restorán que queda en la esquina de la vía, les sirvieron
un vaso de cerveza y el acusado dijo que lo que quería era una
botella de ron completa ; que el testigo rehusó pagársela y salió
y el acusado se dirigió a varias personas que estaban tocando
una vellonera y se le acercaron a él ; que le acometieron con los
puños, habiendo sido el acusado el primero que le acometió y lo
agredió ; que se agarraron y cayeron al suelo, cayendo el acu-
sado encima y él debajo ; que estando peleando vino Miguel
Collazo Pérez y le quitó un sombrero que él tenía puesto y le
acometió y lo agredió con los pies ; que mientras forcejeaba con
el acusado, éste le metió la mano en el bolsillo derecho (pág. 6
T.E.) ; que cuando llegó a la próxima estación de la Compañía
Majestic, se buscó los bolsillos y no encontró el dinero (pág. 7
T.E.) ; que tenía en el bolsillo 12 pesos (pág. 7 T.E.) ; que
llegó a la estación del taxi y pidió un carro que lo condujera al
Cuartel de la Policía de la parada 19 y allí informó los hechos
(pág. 9 T.E.) ; que no pudo identificar a las demás personas
que le acometieron y le agredieron. El testigo identificó un
sombrero que usaba esa noche. Declaró además que Manuel
Collazo, uno de los co-acusados le cogió el sombrero y salió con
él. A preguntas de la defensa declaró que ese día había tomado
licor, que se había dado dos palitos (pág. 12 T.E.) ; que no
conocía a los acusados (pág. 13 T.E.) ; que cuando llegó a la
estación de Martín Peña se dió cuenta que le faltaba el dinero
(pág. 14 T.E.).

"Uno de los señores del jurado interrogó al testigo, surgiendo
el siguiente diálogo :

" 'P. ¿Ud. declaró que este acusado, cuando Ud. estaba en el
suelo le sacó del bolsillo del chaquetón algo? ¿Pudo ver qué le
sacó?

" 'R. Yo no tenía nada más el dinero.

" 'P. ¿Vió que le sacó dinero?

" 'R. Yo ví que me sacó el paquetito que tenía ahí. Yo no
tenía otra cosa que el dinero. Ví el paquetito cuando lo llevaba
por el aire. Ahí yo no tenía más papeles ni más nada. Así lo
tenía ahí para ponerlo en la cartera.

" 'P. ¿Habiendo tenido un billete de cinco pesos y diez de a
peso, como recuerda que le quedaban 12 pesos, no tenía menudo?

" 'R. Me quedaban 35 centavos en la relojera que fué lo único

que me apareció en la relojera. Una peseta y un vellón de diez.'

"A este testigo le siguió *Hipólito Vega Maysonet*. Declaró que es de oficio carpintero; que tiene un negocio (ventorillo) en la Calle Virtud de Santurce; que en su negocio le compró un sombrero por $1.75 a Manuel Collazo Pérez (pág. 24 T.E.). El testigo identificó el sombrero por él comprado al co-acusado Manuel Collazo Pérez. El Fiscal ofreció en evidencia el sombrero identificado por el testigo y se admitió por la Corte sin oposición de la defensa. (Pág. 24 T.E.). Con este testigo cerró El Pueblo su casq renunciando al resto de la prueba por ser de carácter acumulativa. (Pág. 25 T.E.)."

La prueba de descargo fué al efecto de que el acusado y Mario González tuvieron un encuentro personal sosteniendo una riña y que en ningún momento el acusado sustrajo dinero alguno de González. El conflicto de prueba fué resuelto por el jurado, dando crédito a la de cargo, y siendo ésta suficiente para sostener el veredicto[1] no será alterado en apelación. *Pueblo* v. *Santos*, 67 D.P.R. 650; *Pueblo* v. *Rodríguez*, 68 D.P.R. 186; *Pueblo* v. *Blanco*, 68 D.P.R. 932.

Pasemos al segundo error señalado.

 Según aparece de los autos ante nos, el juez de la corte inferior, al comenzar sus instrucciones al jurado, manifestó: "Las partes estipularon que no se hiciese un análisis de la prueba." Si bien en el récord no aparece una estipulación en ese sentido, no estamos en condiciones de resolver que

---

[1] Debemos consignar que si bien la acusación se radicó por un delito de hurto mayor, sus alegaciones imputaban, en efecto, un delito de robo pues en ella se alegó que los acusados "ilegal, voluntaria, y maliciosamente, y con la intención criminal de cometer hurto y privar al dueño de su legítima pertenencia despojaron mediante la violencia y contra la voluntad del Sr. Mario González Molina de la suma de $12 en efectivo y un sombrero de Panamá valorado en $7.50 todo esto perteneciente y de la propiedad del Sr. Mario González Molina." La prueba de cargo demostró también la comisión de un delito de robo. Estando el de hurto mayor, sin embargo, comprendido en el de robo, 15 Cal.Jur. 891, *Larceny*, sec. 4; *People* v. *Church*, 116 Cal. 300 (1897), 48 P. 125; *People* v. *Covington et al.*, 34 P.2d 1019 (1934); *cf.* 2 Burdick, *Law of Crime*, 401, el veredicto por hurto mayor está sostenido por la prueba. En todo caso, de existir error en el veredicto rendido, éste sería favorable al acusado y de ello no puede quejarse. 14 Cal. Jur. 106, *Indictment and Information*, sec. 79; *People* v. *Dong Pok Gip*, 164 Cal. 143 (1912), 127 P. 1031.

en efecto así no se acordara por las partes, sobre todo cuando nada hay en autos que indique que el acusado por conducto de su abogado hiciera objeción a las manifestaciones del tribunal o tomara excepción de las instrucciones al jurado. Es ahora en apelación, por primera vez, que sostiene que no hubo tal estipulación. En *Pueblo* v. *Valentín*, 63 D.P.R. 787, 794, dijimos:

"Es cierto que la corte está obligada a hacer un resumen de la evidencia, según se ha resuelto en los casos de *Pueblo* v. *Cartagena*, 54 D.P.R. 870 y *Pueblo* v. *Lebrón*, 61 D.P.R. 657; pero cuando la corte, por inadvertencia o por alguna otra razón deja de hacerlo, es al acusado a quien corresponde solicitar de la corte que así lo haga. Si el acusado, como ocurrió en el presente caso, renuncia ese derecho al hacer constar expresamente que no tiene objeción alguna a las instrucciones, no tiene motivo alguno para quejarse. Además, no estamos convencidos de que el acusado haya sufrido perjuicio alguno."

Estamos satisfechos, bajo las circunstancias de este caso, de que, según lo indicó el juez inferior, el acusado renunció al resumen de la prueba, y de que por lo tanto no tiene motivo alguno para quejarse. No obstante, precisa repetir aquí una vez más lo dicho en *Pueblo* v. *Lebrón*, 61 D.P.R. 657, 670, y reiterado en *Pueblo* v. *Rodríguez*, 69 D.P.R. 980, 987, que es expresión cabal de la norma que los jueces de distrito deben invariablemente seguir, en juicios por jurado, conforme al inciso 8 del artículo 233 del Código de Enjuiciamiento Criminal:

"La práctica de omitir el juez hacer el resumen de la prueba, no sólo es contraria al precepto expreso de la ley, si que perjudicial a los fines de la justicia. La razón por la cual debe hacerse un resumen de la prueba es, como dice el precepto transcrito, traer a la atención del jurado los hechos esenciales presentados por una y otra parte. En otras palabras, separar la paja del grano, evitando así que el jurado pueda ser inducido a error o confusión al tomar en cuenta hechos que son inmateriales para la resolución del caso. Es más, el juez en sus instrucciones no debe transmitir la ley en abstracto. El jurado se compone de personas legas en materia de Derecho y transmitirles la ley

en esa forma, equivale a poner en sus manos los estatutos para que ellos resuelvan el caso de acuerdo con la interpretación que crean más correcta. Por eso la mejor práctica es, después de hacer el resumen, exponer al jurado las distintas conclusiones a que pueden llegar en la apreciación de la prueba e indicarles entonces el veredicto que proceda de acuerdo con cada una de dichas conclusiones. De esa forma la misión del jurado queda circunscrita a sus verdaderos límites, es decir a determinar las cuestiones de hecho, y se evita que a pesar de estar todos de acuerdo en cuanto a los hechos, incurran en error en la aplicación de la ley."

*La sentencia será confirmada.*

El Juez Asociado Sr. Snyder no intervino.