EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PABLO FÉLIX MORALES, acusado y apelante.

Número 15857.

*Sometido:* 1 de abril de 1955. *Resuelto:* 9 de agosto de 1956.

*F. Pérez Rejis,* Defensor Público, abogado del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Rafael L. Ydrach Yordán* y *Ramón Olivo Nieves, Fiscal* y *Fiscal Especial, respectivamente, del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El apelante fué acusado conjuntamente con otra persona, de una infracción a la Ley núm. 147 de 26 de abril de 1951, porque... "allá para el día primero del mes de abril de 1953, y en la cárcel Municipal de Juana Díaz, P. R. dentro del Tribunal Superior de Puerto Rico, Sala de Ponce, Puerto Rico allí y entonces de una manera ilegal, voluntaria y criminalmente, actuando en común acuerdo convinieron y pactaron en introducir, como introdujeron, dentro de la Cárcel Municipal de Juana Díaz, P. R., en donde estaban ingresados varios presos, ingresados legalmente por la Juez de Distrito Hon. Herminia Tormes, cierta cantidad de bebida alcohólica y embriagante (ron caña), la cual recibió el acusado Pablo Félix Morales, conocido por Macario, quien allí y entonces (era) uno de los mencionados presos, y la tuvo bajo su inmediata posesión dentro de la cárcel municipal, *con el propósito de circularla ofreciéndola a otros presos que estaban ingresados en la cárcel...*"

La Ley núm. 147 de 26 de abril de 1951 en la parte pertinente a este estudio dispone: que "toda persona que en contravención a la ley vendiere o ayudare a vender o *circular* o que intentare introducir, vender o *circular* o que introduzca, venda o *circule,* drogas, narcóticos o estupefacientes, armas de cualquier clase, navajas u hojas de afeitar, *bebidas alcohó-*

*licas o bebidas embriagantes*, explosivos, proyectiles, o cualquier otro artículo o cosa de contrabando o cualquier carta o mensaje de contrabando, a un confinado en una institución penal, prisión o cárcel en Puerto Rico o en los terrenos de la misma, incurrirá en delito grave (felony) . . ."

Como se ve el delito tiene varias modalidades: (1) introducir, (2) vender o (3) *circular* cualesquiera de los objetos o sustancias prohibidos.

La causa fué vista ante un jurado y el apelante declarado culpable y posteriormente sentenciado por dicho delito. En apelación ante nos el apelante señala los siguientes errores: (1) el tribunal apelado cometió error al admitir la acusación enmendada y someter a juicio a los acusados por los hechos alegados en dicha acusación enmendada; (2) el tribunal apelado cometió error al transmitir las instrucciones al jurado; (3) el tribunal apelado cometió error en la apreciación de la prueba.

■■■ En cuanto al primer error relacionado con la admisión de la acusación enmendada, los autos demuestran los siguientes hechos: la acusación original se presentó el 17 de abril de 1953 y le fué leída al apelante el 21 de mayo de 1953, en cuya ocasión el apelante hizo alegación de inocente; la acusación enmendada se presentó el 20 de agosto de 1953 y le fué leída al apelante el 27 de agosto de 1953, en cuya ocasión el apelante volvió a formular alegación de inocente y solicitó juicio por jurado. La vista de la causa se señaló para el 22 de octubre de 1953, y fué en dicha vista, donde por primera vez, el apelante planteó la cuestión, que la segunda acusación enmendada se había presentado sin autorización del tribunal, después del apelante haber alegado inocencia ante la primera acusación.

Los autos demuestran además, que en la lectura de la acusación enmendada el día 27 de agosto de 1953, al percatarse el Juez que presidía la Sala, que la acusación enmendada tenía un número distinto al número de la acusación original, "ordenó se elimine el número que se le dió en Secretaría a la

acusación enmendada y que se una la misma a este expediente", (L. de S. 6). No hay duda, pues, que desde la fecha de la lectura de la acusación enmendada, el tribunal tuvo conocimiento que se había radicado una acusación enmendada, puesto que ordena que la acusación enmendada sea radicada bajo el mismo número que tenía la acusación original. No hay duda, tampoco, que desde igual fecha, el apelante tuvo conocimiento que una nueva acusación enmendada con reincidencia había sido presentada contra él. En la lectura de la acusación enmendada, el abogado de la apelante no hizo objeción alguna a que se presentara y se le leyera a su representado dicha acusación enmendada.

El Código de Enjuiciamiento Criminal de Puerto Rico no contiene un procedimiento típico para enmendar una acusación, a menos que no se trate de una enmienda autorizada al declarar con lugar una excepción perentoria. En algunas ocasiones, al permitir enmiendas a una acusación no excepcionada, hemos utilizado las disposiciones del art. 158 de dicho Código, que establece: "...Si el tribunal no permitiere que se modifique la acusación, ni ordenare la presentación de otra, deberá ponerse en libertad al reo, si estuviere bajo custodia; ..." En el caso de *Pueblo* v. *Calero*, 68 D.P.R. 316, (De Jesús), (1948), cita precisa a la pág. 326, resolvimos, que basta un "mero permiso" del tribunal para enmendar una acusación ya radicada.

Como en Puerto Rico no se sigue el procedimiento de acusación por un gran jurado *(indictment)* y se sigue el procedimiento de acusación por el Ministerio Fiscal *(information)*, el problema de permitir enmiendas a una acusación por un tribunal, no reviste la seriedad que dicho problema tiene cuando la acusación debe formularla un gran jurado: "anotación sobre el poder de un tribunal para permitir enmiendas a una acusación por un gran jurado, *(indictment)*" 7 A.L.R. 1516; anotación suplementaria sobre lo mismo en 68 A.L.R. 928. Cuando el poder de acusar le es conferido a un gran jurado, el tribunal no debe arrogarse dicho poder, y en virtud

de una enmienda permitir que un delito se cambie por otro, aunque el tribunal tiene poder para enmendar la acusación del gran jurado cuando se trate de ciertos defectos de forma.

Cuando el poder de acusar le es conferido al Fiscal, como en el caso de Puerto Rico, el tribunal puede permitir enmiendas que altere sustancialmente el delito comprendido en una acusación *(amendment of substance)*, siempre y cuando que lo haga antes del juicio y que en el acto de la lectura de la acusación *(arraignment)* enmendada, se le dé al acusado una oportunidad de alegar nuevamente contra la acusación enmendada: 27 Am. Jur. 680, sec. 121; *State* v. *Hartung*, 30 N.d 491 (Smith), (1948), cita precisa a la pág. 496. Durante el juicio el poder del Tribunal para enmendar una acusación está limitado a autorizar enmiendas por defectos de forma (art. 83 del Código de Enjuiciamiento Criminal de Puerto Rico—34 L.P.R.A. 59, sec. 138—).

La enmienda en este caso consistió en añadir a la acusasación original ciertos delitos por los cuales el acusado había cumplido condena. No hay duda que se trata de una enmienda sustancial y no de una enmienda formal—2 Wharton's. *Criminal Evidence* 538, sec. 645, (duodécima ed. de The Lawyers Co-operative Publishing Company de 1955). Pero en este caso se trata de una acusación enmendada que le fué leída nuevamente al acusado, contra la cual éste alegó ser inocente incluso de la reincidencia. Cualquiera objeción a la enmienda ha debido formularse antes de la alegación correspondiente, en el momento de la lectura de la acusación enmendada, y no en el momento del juicio, pues si así no se hace, se considera renunciada: *State* v. *District Court*, 200 P.2d 248, (Angstam), (1948), cita precisa a las págs. 249-250. Es más, en el presente caso, durante el juicio, antes de empezarse a discutir la legalidad de la enmienda, el acusado aceptó que había cumplido otras condenas para que no fuera necesario traer al Alcaide de Cárcel de Guayama, (T. 1-2).

■ Con relación al permiso previo del tribunal, si bien en el legajo no hay una versión de las palabras pronunciadas por

el Juez que presidió la lectura de la acusación enmendada, hay constancia en la minuta de la sesión transcrita de la orden dictada por el tribunal corrigiendo el defecto de numeración aparte de la acusación enmendada y ordenando que la acusación enmendada se radicara bajo el mismo número de la acusación original, de lo que se colige, que el tribunal autorizó la presentación de la nueva acusación.

(6, 7) En cuanto al segundo error relacionado con las instrucciones transmitidas al jurado, el mismo se refiere a cierto testimonio prestado por uno de los testigos de la prueba de la acusación, en el sentido, que un termo de su propiedad había sido utilizado para introducir el ron en la cárcel. De acuerdo con el testimonio del testigo de la acusación dicho termo le fué solicitado por el apelante y cuando volvió con el ron el apelante se quedó con él hasta que apuró dicho ron. De acuerdo con el testimonio de un coacusado, que no apeló de la sentencia que se le impuso en este mismo caso, cuando él volvió con el termo se lo entregó al testigo de la acusación y éste lo guardó en su celda.

La condición de cómplice del testigo de la acusación descansaba en el crédito que el jurado pudiera darle a la declaración del coacusado. Si un testigo puede o no puede ser un cómplice es una cuestión a dilucidarse por el jurado, si la evidencia es susceptible de considerarse en una u otra forma, y existe justificación para distintas inferencias sobre el hecho de la complicidad: 2 Wharton's *Criminal Evidence* 225, sec. 446 (ed citada.)

En este caso, el ilustrado Juez que presidía la Sala dió una instrucción en la alternativa para el caso que el jurado creyera el testimonio del coacusado, instruyéndole al jurado, que en caso de darle crédito al testimonio del coacusado, debía considerar al testigo de la acusación, dueño del termo en el cual se introdujo el ron en la cárcel, un cómplice, cuyo testimonio debía ser corroborado. Tal parece que ésa es la regla de buena práctica en un caso como éste: Caljic— *California Jury Instructions* (ed. de West Publishing Co. de

1946). El resto del señalamiento carece de mérito; el hecho de describir al cómplice como un coautor le ofrece bastante información al jurado sobre la relación delictiva que debe existir entre el acusado y su cómplice: *Pueblo* v. *Díaz*, 67 D.P.R. 785 (De Jesús), (1947), cita precisa a la pág. 787; *Pueblo* v. *Villanueva*, 71 D.P.R. 917 (Marrero), (1950), cita precisa a la pág. 920. El resto del señalamiento carece de méritos.

■■ En cuanto al tercer error relacionado con la apreciación de la prueba, el apelante trata de convencernos que la prueba de la acusación fué rebatida por la prueba de la defensa y la prueba de la defensa resulta más creíble que la prueba de la acusación. El aquilatar la prueba es una de las facultades que se le reconocen al jurado. Nuestra misión consiste en examinar la prueba a los efectos de concluir si hubo prueba suficiente para la convicción. Estamos convenidos que en este caso la hubo.

*Debe confirmarse la sentencia apelada.*