EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN BELÉN, MIGUEL JUSINO, FAUSTO JUSINO y JOSÉ A. LÓPEZ, acusados y apelantes.

*Números:* CR-68-50,      *Resueltos:* 14 de noviembre de 1968
CR-68-53

*Ramón Torres Rodríguez,* abogado de los apelantes; *Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador General,* y *Federico Rodríguez Gelpí, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: En los casos de epígrafe permitimos a los apelantes radicar un alegato para todos los casos por estar los mismos relacionados entre sí; porque la convicción de todos los apelantes se basa en el testimonio del mismo agente encubierto; por tratarse del mismo delito en todos los casos; y porque los planteamientos son iguales en todos los casos.

Contra los acusados se radicaron acusaciones por violación a la Sec. 4 de la Ley Núm. 220 de 1948 (Ley de Bolita —33 L.P.R.A. sec. 1250). Fueron juzgados y convictos el 28

de abril de 1967 en el Tribunal Superior, Sala de Mayagüez, y sentenciados a cumplir seis meses de cárcel en cada caso. A Ramón Belén, Fausto Jusino y José A. López, se les imputó una infracción a cada uno. A Miguel Jusino se le imputaron dos infracciones.

Los apelantes apuntan que erró el tribunal de instancia (1) al declarar culpables a los acusados con prueba insuficiente y al no concederles el beneficio de la duda razonable; (2) al declarar culpables a Ramón Belén, José A. López y Miguel Jusino a base de una acusación enmendada no ordenada ni autorizada por el tribunal; y (3) al no dar cumplimiento a la Regla 38(b) de Procedimiento Criminal que ordena la celebración de una nueva lectura de acusaciones al enmendarse las acusaciones, privando así a los apelantes a su derecho a formular las alegaciones correspondientes.

En los casos de los apelantes Belén, Jusino y López, se radicaron acusaciones de *posesión* de material de bolita y de venta de un número determinado para utilizarse en dicho juego ilegal. Luego de leídas las acusaciones y de hacer los apelantes alegación de no culpable, radicó el fiscal una moción alegando que su prueba establecía solamente la venta del número de la bolita. Aparece en los autos de cada caso la acusación enmendada imputándole a cada uno la venta en cuestión.

Los dos apuntamientos basados en que la acusación enmendada no fue autorizada por el tribunal y en el incumplimiento de la Regla 38(b) de las de Procedimiento Criminal no tienen mérito.

■ En la acusación original a los anteriores tres apelantes se les imputaba *posesión y venta* y en la acusación enmendada se les imputó sólo la *venta*. Por lo tanto, desde la acusación original los apelantes quedaron informados que se les acusaba de la venta de números de la bolita. De manera que la enmienda no fue una subsanación de un defecto sustancial, ya que no se trataba de una omisión de algo

esencial o de un nuevo delito. En realidad se estaba beneficiando a los apelantes ya que bajo la acusación enmendada sólo se les estaba imputando la *venta*, y no la *venta y posesión* alegadas en la acusación original. La Sec. 4 de la Ley de Bolita contiene varias modalidades sobre la comisión del delito. Habiéndoseles imputado dos de las modalidades en la acusación original, la prueba de una de las modalidades imputadas era suficiente para sostener una convicción. *Pueblo* v. *Matos Pretto*, 93 D.P.R. 113, 118 (1966).

Con relación a la previa autorización, si bien en el récord no hay un pronunciamiento del magistrado al efecto, de los autos surge que el fiscal radicó moción solicitando permiso para radicar las acusaciones enmendadas; que a éstas se les asignó el mismo número que a las originales y que el tribunal continuó los procedimientos sin objeción alguna de parte interesada. Se desprende de esto que el tribunal autorizó la presentación de las acusaciones enmendadas. *Pueblo* v. *Morales*, 79 D.P.R. 605 (1956). Como no se trataba de una enmienda sustancial no era necesario que se celebrara nuevamente el acto de la lectura de la acusación. La Regla 38(b) de las de Procedimiento Criminal hace mandatorio el acto de lectura de la acusación sólo si se trata de una enmienda sustancial a la misma. Como demostramos previamente, las enmiendas a las acusaciones no eran de índole sustancial sino sólo la eliminación en la acusación de una de las dos modalidades originalmente imputadas.

En cuanto al caso en contra de Ramón Belén, el agente encubierto testificó que el propósito de los agentes encubiertos es conseguir prueba contra los violadores de la Ley de Bolita; que él ha trabajado en el área de San Germán, Sabana Grande, Yauco y Guánica, por espacio de tres años; ha radicado 186 casos; que el día 25 de noviembre de 1966, a eso de las 2:30 P.M. estaba viajando en el vehículo que conducía el apelante Ramón Belén, del Bo. Maginas de Sabana Grande, al pueblo de Sabana Grande; que dicho automóvil es

un Ford del 66, capota crema y el resto brown, tablilla pública 200-787; que en el automóvil viajaban otras personas; que el testigo viajaba en el asiento delantero al lado del apelante; que cuando iban pasando por el kilómetro 217.6 de la carretera Núm. 2, el apelante le dijo que tenía 29 fracciones del 573; que el testigo le dijo que iba a jugar 13 fracciones de ese número; que luego llegaron a Sabana Grande; que le pagó 15 centavos del pasaje y el apelante le cobró $1.04 de las fracciones que le había vendido; que el apelante no le mostró lista ni el testigo le pidió contraseña porque se descubría. Al bajarse del carro el testigo fue al servicio sanitario de un restaurant y tomó nota en una libretita. Tenía la libretita en el juicio. Luego rindió informe de la violación de la ley. Declaró que estaba jugando en relación con las últimas tres cifras del premio mayor de la lotería.

Invocan los apelantes a *Pueblo* v. *García*, 92 D.P.R. 573 (1965), donde a la pág. 576 en un escolio dijimos:

"En los casos que generalmente se siguieron contra los vendedores de números para el juego de bolita, el bolitero apunta en su papel el número jugado. Usualmente el agente encubierto ve cuando se apunta el número y a veces recibe una constancia de la jugada. Cuando declara en juicio, bien presenta la constancia recibida, o expresa que vio al agente anotar el número en su lista. Pero en el presente caso el oficial de orden no declara que el acusado tuviera el número apuntado. Solo afirma que el acusado le dijo que había jugado el 413 y en virtud del intercambio convenido el agente encubierto obtenía el 'derecho' a recibir el premio de la bolita si el número resultaba agraciado. . . ."

El escolio de *Pueblo* v. *García*, supra, se refiere a que no resolvimos en aquel caso, porque no había necesidad, si esa prueba era suficiente para condenar.

En el caso del apelante Ramón Belén, el testigo no identificó solamente el automóvil en que viajaba, sino que declaró sobre otras personas que viajaban en él y sobre la posición que él ocupaba en relación con el apelante; el sitio donde

ocurrió la oferta y el sitio donde se consumó la transacción, los detalles de la oferta; el pago del pasaje y el olvido del testigo de pagarle por los números jugados, así como el cobro por parte del apelante del dinero ($1.04) y las notas que tomó cuando fue al servicio sanitario del restaurant. Nótese que en este caso se adujo prueba sustancial muy en exceso de aquella que hicimos referencia en el escolio (1) de *Pueblo* v. *García,* supra, razón por la cual no nos confrontamos en este caso con una situación evidenciaria similar a la apuntada en el referido escolio.

En contra de Miguel Jusino se radicaron dos acusaciones, una de posesión del material y venta de número de bolita en 25 de septiembre de 1966; la otra en cuanto a venta de número de bolita en 11 de octubre de 1966. En cuanto a la primera testificó el agente que estaba en el Barrio Rayo Guaras de Sabana Grande como a las 5:45 P.M., frente a la residencia de Ramón Belén. Llegó Miguel Jusino y le dijo al agente que no le jugara a Ramón Belén. Entonces le dijo que tenía unos números de bolita para vender y de los que tenía le ofreció uno al agente. El número era el 669 y el apelante le ofreció 10 fracciones, que el agente aceptó y compró. Sigue declarando el agente que el apelante sacó una lista de números en la que aparecían otros números además del 669 y que tenía el número 10 al lado derecho de la lista. El apelante subrayó el 669, y al número 10 que tenía al lado derecho le escribió el nombre del agente en el lado derecho. Dicha lista era "más o menos como una página de libreta, los números eran de tres cifras con otro número de dos cifras al lado derecho." No le dio contraseña ni el testigo se la pidió. Luego de la transacción el agente se retiró de allí y tomó nota en su libreta. Posteriormente rindió informe de esta violación de la ley.

Con respecto a la segunda acusación testificó el agente que pasaba como a las 5:30 P.M. cerca de la residencia del apelante Miguel Jusino y lo vio parado en el portón de la casa.

Se detuvo y empezaron a hablar. Luego el apelante le preguntó si el testigo le iba a jugar número de bolita. El agente le contestó que sí, si tenía un número bajito. El apelante le ofreció el 165, con diez fracciones. El agente aceptó la oferta y el apelante se apuntó el número en la *palma de la mano* y le dijo al agente que lo apuntaba allí porque tenía la lista en su casa. El apelante no le dio contraseña ni el agente se la solicitó. Como a los cinco minutos después de la transacción tomó nota de la transacción y luego rindió informe de violación de ley. No arrestó al apelante en las dos ocasiones porque se descubría. Iba jugando en las dos ocasiones en relación al premio mayor de la lotería de Puerto Rico. Testificó, además, que se dedicaba a agente encubierto de la policía de Puerto Rico; que su propósito era conseguir prueba contra los violadores de la Ley de Bolita; estaba destacado en San Germán, Sabana Grande, Yauco y Guánica, que su investigación duró alrededor de tres años en esa área y que ha radicado 186 casos.

En cuanto a Fausto Jusino, acusado de posesión de material y de venta de número de la bolita, el agente en cuestión testificó que el 14 de octubre de 1966, a eso de las 7:30 P.M. se encontraba en el Barrio Maginas de Sabana Grande. Allí vio a Fausto Figueroa o Fausto Jusino (lo conoce por los dos nombres). Ese día el testigo estaba frente al dispensario médico. Llegó Fausto Jusino y se pusieron a hablar sobre diferentes temas. Luego el apelante le preguntó al testigo si ese día no le iba a jugar nada. El testigo le preguntó que cuáles números tenía y el apelante empezó a decirle números entre los cuales le dijo el 725. Al testigo le gustó ese número y le dijo que se lo jugara. El apelante sacó una página de libreta del bolsillo de la camisa donde tenía varios números escritos, de tres cifras, con otro número de dos cifras al lado derecho, subrayó el 725 y el otro que tenía al lado y le puso el nombre del testigo a la parte derecha del número. El testigo le pagó por el número vendido. Luego el apelante

se fue y el testigo tomó nota de esa transacción y posteriormente rindió un informe de violación de ley. No le pidió contraseña ni lo arrestó porque se descubría. También declaró que se dedicaba a agente encubierto, destacado en San Germán, Sabana Grande, Yauco y Guánica, que la investigación llevaba tres años y que había radicado 186 casos, y que iba jugando en relación con el premio mayor de la lotería de Puerto Rico.

Con respecto a José A. López, acusado de venta de número de bolita, el agente declaró que el 25 de noviembre de 1966, como a las 4:50 P.M. estaba en la salida de Sabana Grande para Yauco, frente a una fábrica, la Defilló Lingerie, a la orilla de la carretera. Llegó José A. López y se detuvo más adelante. El testigo se acercó hacia el apelante y le preguntó la hora, para entablar conversación y se quedó conversando con él; luego le preguntó si tenía números de bolita para vender. El apelante le contestó que tenía uno pero era de Carlos Soto. Luego el apelante pensó un rato y le dijo al testigo que si le interesaba, se lo vendía "porque la luz de alante era la que alumbraba." El testigo aceptó. El apelante estaba sentado en un automóvil en que llegó, sacó de la gaveta del automóvil una libretita color verde, y en una de las páginas donde tenía unos números escritos escribió el número 235 que le había vendido al testigo. Describió el automóvil como un Chevrolet del 53, verde oscuro y verde claro, con tablilla 522-898. No le pidió contraseña ni lo arrestó porque se descubría. Tomó nota de esa transacción y luego rindió un informe de violación de ley. Declaró, además, que iba jugando en relación con el premio mayor de la lotería de Puerto Rico. También declaró que es agente encubierto de la policía, destacado en Sabana Grande, San Germán, Yauco y Guánica; que lleva trabajando allí tres años y que ha radicado 186 casos.

■ Apuntan los apelantes que la prueba presentada por el Pueblo es insuficiente. No tienen razón. Esa prueba cumple

con los requisitos establecidos en *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704, 708 (1966). En su declaración el agente testificó en los cinco casos que (a) observó cómo los apelantes, bien apuntaban los números de bolita que el agente jugaba en una página de libreta o en la palma de la mano; (b) tomó nota de esas transacciones y las apuntó en una libreta que tenía; (c) identificó correctamente los automóviles e hizo referencia a personas cercanas; (d) precisó el sitio, fecha y hora en que compró los números de la bolita a cada uno de los apelantes; y (e) reveló el término y extensión de la investigación, el área cubierta, los resultados obtenidos y otros detalles relacionados.

*En vista de lo expuesto, deben confirmarse las sentencias dictadas en estos casos por el Tribunal Superior, Sala de Mayagüez, en 28 de abril de 1967.*