EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ARTURO ROSADO ROMÁN, acusado y apelante.

*Número:* CR-63-51     ·     *Resuelto:* 24 de septiembre de 1963

*Víctor Velasco Gordils,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Jenaro Marchand, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: El apelante fue convicto y sentenciado por una infracción a la Ley de Explosivos (25 L.P.R.A. sec. 491).

Solicita que revoquemos la sentencia porque el Tribunal sentenciador erró, 1) al resolver que la acusación imputa delito; 2) al negarse a ordenar al jurado rindiera un veredicto absolutorio, y 3) al negarse a instruir al jurado sobre las medidas que la Corte podía adoptar en relación con el acusado si el jurado lo absolvía por razón de locura.

Los errores apuntados no fueron cometidos. La acusación le imputó que "en o para el 10 de diciembre de 1961, alrededor de las 4:30 de la tarde, en la escuela Carrión Maduro de la Pda. 22 1/2 de Santurce, P.R., . . . ilegal, voluntaria, maliciosa y criminalmente y a sabiendas, violó la Sec. 491 del Título 25 de las Leyes de Puerto Rico Anotadas (Ley de Explosivos de P.R. vigente), consistente dicha violación en haber usado un explosivo, lanzando el mismo dentro de uno de los salones de la referida escuela con el propósito de hacer daño corporal y de aterrorizar o asustar a cualquier persona, y de hacer daño o destruir propiedad".

La Sec. 491 del Título 25 de L.P.R.A., dispone:

"Toda persona que use dinamita u otro explosivo ilegalmente con el propósito de hacer daño corporal, o de aterrorizar o asustar

a cualquier persona, o para hacer daño o destruir cualquier propiedad, o para hacer daño a la misma en cualquier forma, será culpable de delito grave . . ."

▮ En la Sec. 482 se define lo que comprenderá un "Explosivo" o "explosivos". A los fines de la ley son todos aquellos compuestos o mezclas de las cualidades allí especificadas más las substancias especificadas en el "Disponiéndose" de dicha sección. (¹)

▮ La acusación pudo especificar cuál de estos compuestos, mezclas o substancias usó el acusado, mas la falta de esa información en ausencia de una solicitud del acusado a ese efecto, no deja a la acusación desprovista de hechos constitutivos del delito que se le imputó al acusado, a saber; que usó un explosivo ilegalmente con el propósito especificado en la Sec. 491. La acusación informa suficientemente la naturaleza del delito que imputa y no priva al acusado de una alegación futura de *"former jeopardy"*, especialmente si se considera que la acusación contiene el día, la hora y sitio donde el acusado usó ilegalmente el explosivo. Véanse *Pueblo* v. *Rivera*, 75 D.P.R. 903 (1954); *Ortiz* v. *Tribunal*, 75 D.P.R. 58 (1953).

▮ Por el segundo error se sostiene que El Pueblo no demostró la cordura del acusado y en su consecuencia debió ordenarse su absolución. En el caso de *Pueblo* v. *Alsina*, 79 D.P.R. 46 (1956), resolvimos que cuando en la prueba de defensa o en la propia prueba de cargo surgen elementos que ponen en duda la cordura de un acusado, la presunción de cordura desaparece y le toca al Ministerio Público probar tal cosa como cualquier otro elemento del delito. Sin embargo, en el presente caso no se infringió ese principio. El perito médico presentado por la defensa declaró categóricamente que no podía decir si para la fecha de la comisión del delito, 10 de diciembre de 1961, el acusado podía distinguir entre el bien

---

(¹) Véase *Pueblo* v. *Ruiz Vélez*, 85 D.P.R. 483 (1962).

y el mal. Por otro lado, de la prueba de cargo no surge duda sobre la cordura del acusado para la fecha de la comisión del delito. El hecho de que en la noche anterior el acusado se presentara en una estación de gasolina sucio, despeinado y "ajumao", le ofreciera ron al empleado de dicha estación y se pusiera a despachar gasolina por su cuenta, no es prueba de insanidad mental. Tampoco constituye tal prueba el testimonio de la señora que presenció la comisión del delito y quien describe al acusado como "un hombre sucio, descamisado, sin peinar, sin afeitar y que vestía un pantalón viejo, en color gris y la camisa era de un color brown del sucio que tenía", y que cuando lo vio, le dio de momento la impresión de una persona anormal.

■ Como bien afirma en su Informe el Procurador General, el Juez de instancia actuó correctamente al negarse a informarle al jurado que era lo que se iba a hacer con el acusado después que el jurado rindiera veredicto. Tal cuestión era ajena por completo a lo que el jurado debía resolver, esto es, si por la prueba presentada y conforme a las instrucciones trasmitidas por el juez el acusado era culpable o inocente del delito que le imputaba.

*Se confirmará la sentencia apelada.*