EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ARSENIO NAZARIO NIEVES, acusado y apelante.

*Número:* CR-71-29      *Resuelto:* 17 de noviembre de 1971

*Santos P. Amadeo, Ángel M. Rodríguez Losada* y *Bautista de la Cruz Sierra*, abogados del apelante; *Gilberto Gierbolini, Procurador General,* y *Federico Rodríguez Gelpí, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Convicto de los delitos del epígrafe (*) por voto unánime de un jurado, el apelante trae a nuestra consideración seis apuntamientos. Carecen de mérito por los fundamentos expuestos a continuación.

### 1.—*Primer Apuntamiento*

"El Tribunal sentenciador erró al no instruir al jurado, que aunque el acusado-apelante no fuera criminalmente irresponsable de acuerdo con la doctrina de Right and Wrong, sin embargo la dolencia mental que sufría el acusado-apelante cuando cometió el delito constituía un atenuante para reducir el delito de Asesinato en Primer Grado a uno de Asesinato en Segundo Grado."

En apoyo de este apuntamiento meramente se cita la monografía titulada "Mental Disorder Affecting the Degree of a Crime", publicada en 56 *Yale L.J.,* 959–981 (1947).

No se solicitó instrucción sobre este particular al juez sentenciador cuando éste terminó de dar sus instrucciones al jurado y preguntó si el fiscal o la defensa tenía objeciones que hacer u otras instrucciones que solicitar. La defensa contestó que no tenía.

---

(*)*NOTA DEL COMPILADOR*: Los delitos son Asesinato en Primer Grado e infracción al Art. 4 de la Ley de Armas.

El apelante no aduce razones ni cita jurisprudencia alguna en apoyo de su tesis ni nos presenta un análisis de la prueba que pudiera fundamentar su apuntamiento.

No existe base en la prueba que justifique la instrucción en cuestión. Por el contrario, la prueba pericial de la defensa, o sea, el testimonio del Dr. Sanz Ortega fue al efecto de que, no obstante padecer el apelante de un "trastorno de la afectividad. Es una afectividad rígida y fría . . . ." de "cierta ambivalencia, quiere y no quiere, desear y no desear al mismo tiempo . . . ."; es una persona "sumamente recelosa . . . . tiene tendencias compulsivas . . . perseveración sobre todo por las ideas que ha tenido constantemente . . . . en este paciente aparecen ideas delirantes . . . persecutorias, mal construídas, no persevera intensamente en ellas; no las sostiene en todo momento, son cambiantes . . . . En lo que más él se ha caracterizado es en ideas religiosas y místicas.", el apelante "Distinguía entre el bien y el mal." allá para el 9 de agosto de 1963, o sea, casi un año después del día de los hechos que fue el 28 de septiembre de 1962. Testificó el Dr. Sanz, además, luego de leer la confesión del apelante y de considerar la pregunta hipotética del fiscal(1) en que se relacionaron los hechos del caso que culminaron con la muerte de Fernando Pons Moller a consecuencia de la puñalada que le asestó el apelante, que ". . . por las entrevistas que yo he hecho y por lo que he leído del récord y por lo que he oído aquí y por todas esas cosas que usted ha explicado, sí distinguía entre el bien

(1) La relación de los hechos del caso en la pregunta hipotética fue la siguiente:

" . . . ¿una persona que ha tenido dificultad en obtener algo que él quiera y que no ha tenido éxito en conseguir lo que él quiere, que como consecuencia de eso decida matar, planea y mata con posterioridad a la persona que considera que es la que no le ha permitido conseguir lo que él quiere, después de matarlo, al muy poco tiempo de matarlo se entrega a un agente de la policía, y unos 45 minutos a una hora y cuarto después hace una exposición—declara sobre esa serie de hechos, las motivaciones por las cuales lo hizo, y al hacerlo lo hace en la forma que aparece en este documento—me refiero al Exhibit 2 del Pueblo . . .?"

ỳ el mal para el momento de los hechos—hipotéticamente también." (²)

2.—*Segundo Apuntamiento.*

■ Apunta el apelante que el tribunal de instancia incidió al instruir al jurado que por acuerdo de las partes no le haría un resumen de la prueba; que la Regla 137 de las de Procedimiento Criminal exige que se haga tal resumen. Cita el caso de *Pueblo* v. *Millán,* 71 D.P.R. 440 (1950).

De entrada señalamos que la defensa no solicitó que el tribunal de instancia hiciera un resumen de la evidencia, ni objetó ni solicitó instrucción alguna con respecto a la renuncia que hizo a dicho resumen al finalizar sus instrucciones el juez sentenciador en el curso de las cuales informó al jurado que "Por acuerdo de las partes no voy a hacer a ustedes un resumen de la evidencia . . . ."

■ La Regla 137 de las de Procedimiento Criminal autoriza al tribunal el omitir hacer el resumen de la prueba cuando así lo estipulen las partes. No requiere, específicamente, que el acusado participe personal e inteligentemente en tal estipulación. No se citan razones ni autoridades al efecto que tal estipulación se haga por el propio acusado, y no por su abogado como ha sido la práctica prevaleciente.

La renuncia al derecho a juicio por jurado, según la Regla 111 de las de Procedimiento Criminal, debe hacerla el propio acusado en forma inteligente. Debe ser apercibido por el tribunal juzgador de lo que tal renuncia significa y de sus consecuencias. *Pueblo* v. *Juarbe de la Rosa,* 95 D.P.R. 753 (1968); *Pueblo* v. *Delgado Martínez,* 96 D.P.R. 720 (1968).

---

(²) Con respecto a las normas sobre la prueba de locura, véanse *Molina* v. *Jefe Penitenciaría,* 96 D.P.R. 191 (1968); *Pueblo* v. *Rivera Raquel,* 95 D.P.R. 564 (1967); *Pueblo* v. *Adorno Lorenzana,* 93 D.P.R. 788, 795 (1966); *Pueblo* v. *Tribunal Superior,* 92 D.P.R. 116 (1965); *Pueblo* v. *Rosado Román,* 89 D.P.R. 14 (1963); *Pueblo* v. *Cruz Román,* 84 D.P.R. 451, 457 (1962); *Pueblo* v. *Alsina,* 79 D.P.R. 46, 60–62 y 69 (1956); *Pueblo* v. *Colón Morales,* 100 D.P.R. 40 (1971).

La razón de esta norma tan estricta es que el derecho fundamental a juicio por jurado es de rango constitucional, es parte del debido procedimiento de ley y provee corrientemente una garantía de tan alta categoría en el proceso de impartir justicia que no debe permitirse su renuncia sin que la persona afectada la haga personal e inteligentemente con pleno conocimiento de sus implicaciones y consecuencias.

Por el contrario, aunque el resumen de la prueba es también un derecho que las Reglas de Procedimiento Criminal le dan al acusado, no es de carácter tan fundamental como el de juicio por jurado ni de rango constitucional y su renuncia no conlleva consecuencias e implicaciones que afectan en forma tan sustancial los derechos del acusado. Es más, podría decirse que la renuncia al resumen de la prueba es una cuestión de táctica procesal. El acusado, especialmente cuando es lego en la materia no está en condiciones de tomar una decisión inteligente sobre esta materia y requeriría un esfuerzo extraordinario el tratar de instruirlo sobre la misma para que tomara una determinación con pleno conocimiento de sus implicaciones con respecto a dicho derecho. Creemos que ésta es más bien una cuestión procesal que, en beneficio del acusado, es preferible dejar que la continúe resolviendo su representante legal.

En los casos citados por el apelante se acepta que el derecho al resumen de la evidencia puede renunciarse por los abogados de las partes aun cuando la ley expresamente no autorizaba entonces tal renuncia. *Pueblo* v. *Millán*, 71 D.P.R. 440 (1950); *Pueblo* v. *Rodríguez*, 69 D.P.R. 980, 987 (1949).

En *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471, 484–485 (1961), dijimos que "La alegación al efecto de que le fue perjudicial el que el juez que presidió la vista no hiciera un resumen de la prueba se contesta con la afirmación que aparece en el récord, *por parte de la defensa,* de que está conforme con que no se haga tal resumen." (Énfasis nuestro.)

En *Cruzado* v. *People of P.R.*, 210 F.2d 789, 791 (1st Cir. 1954), sostuvo el tribunal que "Cuando un acusado es representado por abogado, es generalmente de presumirse que el abogado adapta sus tácticas en el juicio a lo que en su opinión beneficia más al acusado. Si éste, estando presente, no manifiesta su inconformidad, es por lo corriente razonable presumir que aprueba, o por lo menos se somete a las decisiones tomadas en corte abierta a nombre suyo por su abogado." Véase también *Pueblo* v. *Figueroa*, 77 D.P.R. 188, 205, escolio 16 (1954).

En *Pueblo* v. *Figueroa*, supra, a la pág. 205 se dijo también que "en ausencia de una expresa disposición estatutaria . . . la actuación del acusado a través de su abogado de ordinario sería obligatoria para dicho acusado." Ya hemos señalado que la Regla 137 guarda silencio sobre el *issue* aquí planteado.

■ Por último, el apelante no nos ha demostrado que la omisión del resumen en cuestión le ocasionara perjuicio alguno que justificara la revocación de la sentencia. *Pueblo* v. *Rivera Romero*, supra, a la pág. 485.

■ 3.—*Tercer Apuntamiento.*

Arguye el apelante que el tribunal a quo incidió al instruir al jurado que:

"*La ley no favorece la locura repentina producida por cualquiera impresión, sin que en realidad exista alguna indicación anterior o posterior de ese estado de locura en el sujeto, ni afecta la cuestión el hecho de que el acusado fuera recluido en un manicomio.* (Véase págs. 342 a 343 de la Transcripción de Evidencia)." (Énfasis en el original.)

En apoyo de este apuntamiento la defensa solo sostiene que la instrucción es errónea porque la defensa de locura repentina no se invocó en momento alguno y por lo tanto la instrucción pudo haber confundido al jurado en cuanto al tipo de locura que levantó el apelante a través de su prueba pericial.

No tiene razón. Si bien es cierto que no existía base en la prueba para intercalar la expresión que se impugna ahora por primera vez, no creemos que tal expresión aislada, no comentada como posible defensa, pudo confundir al jurado cuando la misma se encuentra dentro de extensas, bien razonadas y apropiadas instrucciones sobre la locura como eximente de responsabilidad. El error, si es que lo hubo, es insustancial y no afectó los derechos sustanciales del apelante ni prejuzgó su causa.

4.—*Cuarto Apuntamiento.*

Señala el apelante que es errónea la siguiente instrucción:

*"Se presume que todo testigo dice la verdad, aunque esta presunción puede ser destruida o rechazada por su manera de declarar, por el carácter de su testimonio, o por evidencia que afecte su veracidad, honradez, integridad o sus motivos, o por evidencia contradictoria, siendo el Jurado el solo Juez de la credibilidad de los testigos.* (Véase pág. 335 a 336 de la Transcripción de Evidencia." (Énfasis en el original.)

Sostiene el apelante que la instrucción es errónea porque tiende a debilitar la presunción de inocencia del apelante; porque el jurado puede creer que deben creer el testimonio de los testigos de El Pueblo, especialmente cuando el acusado no ha testificado, y porque dicha instrucción constituye una invasión de las funciones del jurado para determinar la credibilidad de los testigos, y además, está en conflicto con la presunción de inocencia cuando el acusado no declara. En apoyo de estos argumentos cita los casos de *United States* v. *Evans*, 398 F.2d 159 (3d Cir. 1968); *Stone* v. *United States*, 379 F.2d 146 (D.C. Cir. 1967) y *United States* v. *Meisch*, 370 F.2d 768 (3d Cir. 1966).

La instrucción impugnada está en armonía con lo dispuesto en el Art. 383 del Código de Enjuiciamiento Civil—Art. 21 Ley de Evidencia—(32 L.P.R.A. sec. 1664).[3]

---

[3] El Art. 383 del Código de Enjuiciamiento Civil dispone que: "Se presume que un testigo dice la verdad. Esta presunción, sin em-

El apelante no impugna la legalidad de esta disposición estatutaria. No tan sólo no explica cómo y por qué puede sostener su impugnación de la instrucción ante los términos claros de la referida disposición, sino que ni siquiera hace referencia a la misma.

El juez fue más lejos al instruir específicamente sobre la función exclusiva del jurado de pasar sobre la credibilidad de los testigos, el alcance del derecho del apelante de no declarar, específicamente que no debe entenderse como una autoincriminación y también sobre la presunción de inocencia que acompaña al acusado. Por último, explicó el juez al jurado clara y detalladamente que es a ellos a quienes les corresponde aquilatar la prueba.

Obviamente el apuntamiento es inmeritorio.

5.—*Quinto Apuntamiento.*

"El juez sentenciador al instruir al jurado sobre la voluntariedad de la confesión del acusado-apelante, en ningún momento instruyó al jurado que para determinar si la confesión fue o no voluntaria, debía tomar en consideración el hecho de que el acusado-apelante no se le advirtió de su derecho a asistencia de abogado cuando hizo la confesión al fiscal investigador."

En apoyo de esta contención, el apelante se limita a citar los casos de *Clewis* v. *Texas*, 386 U.S. 707 (1967) y *Davis* v. *North Carolina*, 384 U.S. 737 (1966) en que se dijo que al considerar la voluntariedad de una confesión, la falta de advertencia de su derecho a estar representado por abogado al iniciarse su interrogatorio da peso adicional a las otras circunstancias demostrativas de que una confesión es involuntaria. Esta era la situación en cuanto a los casos resueltos con anterioridad a *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

bargo, puede ser rechazada, por la forma en que declare, por el carácter de su declaración o por evidencia que afecte su veracidad, honradez, integridad o móviles, o por evidencia contradictoria."

El juicio en el caso que nos ocupa se resolvió con anterioridad a la norma establecida en *Rivera Escuté* v. *Jefe Penitenciaría,* 92 D.P.R. 765 (1965), la cual no tiene efecto retroactivo. *Pueblo* v. *Adorno Lorenzana,* supra. La representación legal del apelante se limita a plantear la anterior cuestión pero no analiza la prueba aducida relacionada con la toma de la confesión a los fines de demostrar que la misma demuestra que la confesión se dio involuntariamente de manera que pudiera argüir que se justificaba, a la luz de la norma de *Clewis* y *Davis,* la instrucción sobre la falta de asistencia de abogado como factor adicional a considerar, instrucción que la defensa no solicitó en el momento oportuno ante el tribunal de instancia.

Hemos examinado la prueba y ésta demuestra que el apelante, luego de apuñalar al occiso se acercó al policía Reyes y le enseñó y entregó un cuchillo ensangrentado y le dijo "que con ese cuchillo acababa de matar a un sinverguenza Jefe de Programas Sociales de aquí en Bayamón"; que Reyes llevó al apelante al hospital a curarle una herida en una mano; que de allí Reyes lo llevó al cuartel de la policía enseguida y de allí a la fiscalía donde el fiscal Grajales quien, luego de conversar con él unos siete minutos, lo pasó al fiscal de turno, Lic. Cabrera, ante quien (luego de advertirle de su derecho de no declarar, que si declaraba lo hacía libre y voluntariamente sin que hubiera sido amenazado o coaccionado, que no se le había hecho ofrecimiento de clase alguna y que lo que declarase podía usarse en su contra), el apelante hizo la confesión y firmó la transcripción de la misma.

Mientras atendían al apelante en el hospital allí llegaron un sargento y cinco o seis policías enviados, según Reyes, "para la seguridad del acusado . . . porque en estos casos nadie sabe la reacción que puedan tener los familiares." En el cuartel, el apelante estuvo unos 10 ó 15 minutos donde se le llevó ante el teniente Feijó. Testificó Reyes que el propósito de llevarlo al cuartel fue "Preguntarle los motivos a él . . . .

Y darle información a mis superiores de la investigación que estaba llevando a cabo . . . . Cuando estábamos en el cuartel se le notificó al fiscal . . . y al detective Rodríguez fue que yo entregué al acusado . . . después de haber sido traído al fiscal . . . para que ellos [la detective] continuara el proceso de tomar fotografías para identificación criminal más tarde y someterle el caso al juez con la prueba . . . ." Testificó Reyes que al pasar el apelante a la oficina de los fiscales, los policías se quedaron fuera; que al rato, mientras el fiscal hablaba con el apelante, él, Reyes, se retiró para continuar la investigación; que ningún policía o algún civil agredió o intimidó al apelante; que ". . . Esos agentes simplemente vinieron acompañándome a mí para la seguridad del acusado; instrucciones superiores que me dieron a mí para que permaneciéramos siempre ahí." El taquígrafo de los fiscales testificó que el apelante fue traído por Reyes a la oficina de los fiscales; que éste conversó con ellos un rato y luego llamaron al testigo a tomar la declaración del apelante en maquinilla luego de hacerle las advertencias de rigor las que explicó en detalle; que al apelante no se le agredió o coaccionó para que prestara la declaración la cual dio voluntariamente. El fiscal Grajales testificó en términos similares. La prueba de la voluntariedad, pasada primeramente ante el juez de instancia fue repetida ante el jurado. *Pueblo* v. *Figueroa García*, 91 D.P.R. 729, 740 (1965).

■ El anterior resumen de la prueba de voluntariedad demuestra la ausencia de los factores que tanto en *Davis* como en *Clewis* justificaron concluir que en esos casos la confesión fue involuntaria y que la ausencia de abogado constituía un factor adicional en apoyo del carácter de involuntariedad de la confesión.

Lo expuesto es demostrativo de que la mejor práctica indica que el apelante debe ofrecernos un análisis cuidadoso y detallado de la prueba pertinente cuando apuntamientos como el que nos ocupa lo requieran.

Por el contrario, el juez de instancia instruyó adecuadamente al jurado con respecto a la confesión. (⁴)

6.—*Sexto Apuntamiento.*

"SOSTIENE el acusado-apelante que la sentencia dictada contra éste debe ser revocada porque se le privó del derecho de asistencia de abogado durante la vista preliminar llevada a efecto ante el fiscal actuando éste como agente del juez instructor y por el propio juez instructor, quien a base de la confesión del acusado-

---

(⁴) La instrucción en cuestión fue la siguiente:

HON. JUEZ: . . . Les había instruido a ustedes anteriormente y les instruyo ahora que el Jurado no puede considerar una confesión a menos que quede convencido no sólo de que la misma fue hecha sino, además, que fue hecha voluntariamente. Ustedes son los que van a determinar si la confesión que se alega prestó el acusado fue prestada por éste libre, espontánea y voluntariamente; esto es, sin que haya mediado amenazas físicas, coacción psicológica, coerción, promesa de beneficio, lenuencia, protección; en otras palabras, si existe la ausencia total de algún factor que pudiese, muy a pesar del deseo del acusado, llevarlo a prestar la confesión.

El Pueblo, según les instruí anteriormente, tiene el peso de la prueba, a fin de establecer la voluntariedad de la confesión. Al considerarse si la confesión en este caso fue o no voluntaria ustedes deberán tomar en cuenta la edad del acusado, el estado físico y mental del acusado al momento de prestar la declaración, su preparación, las circunstancias ambientales en el momento de producirse la confesión, el límite de tiempo utilizado en el proceso de la confesión, personas presentes o ausentes, personas que han intervenido en el proceso de la confesión, etc. . . .

Si el Jurado resuelve que la confesión del acusado fue hecha voluntariamente les corresponde entonces determinar el peso que deben darle, como en el caso de otra evidencia debidamente admitida.

Si el Jurado considera que la confesión fue involuntaria deben rechazarla y hacer caso omiso de ella.

El Jurado no está obligado a aceptar que los hechos ocurrieron en la exacta forma expresada en la confesión hecha por el acusado, pues, eso sería dejar al arbitrio del referido acusado el esclarecimiento de la verdad.

El Jurado juzga, examina, pesa y aquilata toda la prueba.

La confesión en este caso es parte de la prueba y el Jurado puede apreciarla a la luz y en relación con el resto de la misma y proceder a actuar en la forma que estimare justa de acuerdo con su conciencia y los principios de ley. Pues, la regla de que una confesión debe considerarse en toda su integridad no obliga al Jurado a dar el mismo crédito a cada parte de ella. El Jurado puede creer la parte que estime digna de creer y rechazar cualquier porción que no le merezca confianza.

Si ustedes tienen duda en este caso de si la confesión fue o no voluntaria, ustedes deben darle el beneficio de esa duda al acusado y determinar que la misma no fue voluntaria."

apelante tomada por el fiscal y por los testimonios de otros testigos, expidió una orden de arresto ordenando el encarcelamiento del acusado-apelante.

También era inadmisible la confesión obtenida del acusado-apelante por el fiscal, sin asistencia de abogado, y la cual se usó para determinar que existía causa probable, no sólo para acusar sino también para arrestar. La confesión obtenida por el fiscal del acusado-apelante y de otros testigos y cuya confesión y declaraciones fueron usadas por el fiscal para determinar causa probable para acusar al acusado-apelante, no sólo en violación de las doctrinas de los casos de *White* v. *Maryland*, 373 U.S. 59 (1963); *Arsenault* v. *Massachussetts*, 393 U.S. 5 (1968); *Pointer* v. *Texas*, 380 U.S. 400; y *Coleman* v. *Alabama*, 399 U. S. 1 (1970), sino también en violación de la doctrina del caso de *Coolidge* v. *New Hampshire*, 29 L.Ed.2d, página 564 (1971)."

El fiscal aceptó que ". . . durante el tiempo que estuvo el acusado en la oficina del fiscal y en el cual prestó una confesión en relación con los hechos, no estuvo asistido de abogado." La prueba demuestra que tampoco estuvo representado por abogado desde que se acercó al policía Reyes hasta que éste lo llevó donde los fiscales, esto es, durante todo el proceso de investigación.

El apuntamiento del apelante se funda en que el acto durante el cual el apelante conversó con el fiscal Grajales, y luego cuando confesó ante el fiscal Cabrera, constituía una vista preliminar llevada a efecto por los fiscales como agentes del juez instructor.

Los casos que cita el apelante en apoyo de este apuntamiento no lo sostienen. *Coolidge* v. *New Hampshire*, 29 L.Ed. 2d 564 (1971), resuelve que una orden de allanamiento de un vehículo de motor expedida por el Procurador General del estado no satisface los requisitos de la Enmienda Cuarta de la Constitución de los Estados Unidos porque no fue expedida por un magistrado "neutral y separado y distinto." En *White* v. *Maryland*, 373 U.S. 59 (1963) se resolvió que arrestado el peticionario por el delito de asesinato y llevado ante un magistrado para vista preliminar en la cual, al ser informado del

delito que se le imputaba (*arraignment*), hizo alegación de culpabilidad sin asistencia de abogado, dicha vista era una etapa crítica del procedimiento que requería asistencia de abogado de manera que tal alegación de culpabilidad no era admisible en el juicio.

En el caso que nos ocupa el apelante confesó su culpabilidad dos veces, una libre y espontáneamente ante el policía Reyes y la segunda mediante confesión formal que suscribió ante un fiscal luego de recibir las advertencias de rigor. La prueba demuestra que esta segunda confesión fue voluntaria. No tenía entonces que advertírsele que tenía derecho a estar representado por abogado en esa etapa de los procedimientos pues el juicio en este caso se celebró meses antes de que resolviéramos el caso de *Rivera Escuté*, supra.

Los hechos del caso ante nos son similares a los de *El Pueblo* v. *Vergara Vázquez*, 99 D.P.R. 318 (1970), en el que reafirmamos la norma de prospectividad de *Rivera Escuté*, supra.

Las circunstancias en *Coolidge* y *White*, supra, son completamente distintas al caso que nos ocupa. La doctrina de que la orden de allanamiento debe expedirla un magistrado es de larga vigencia en Puerto Rico. No está envuelta en el caso ante nos. Por otra parte, no se nos ha sustanciado por el apelante, en forma alguna, que el fiscal, al recibir al apelante y tomar su confesión necesariamente actuó como un agente del juez instructor y que su referida actuación es de la naturaleza de una vista preliminar. Convenimos con el Procurador General que la argumentación del apelante va más bien dirigida a retrotraer la doctrina de *Rivera Escuté*, supra, a la fecha del proceso en este caso cuando ya en repetidas ocasiones hemos dicho lo contrario.

En vista de lo expuesto, *se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Bayamón, en 15 de abril de 1964.*

El Juez Presidente, Señor Negrón Fernández, al igual que los Jueces Asociados Señores Hernández Matos y Torres Rigual, no intervinieron.