Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| MARCOS JOSÉ AYBAR PERDOMO<br><br>Parte Peticionaria<br><br>v.<br><br>HON. LOURDES LINETTE GÓMEZ TORRES en representación del DEPARTAMENTO DE JUSTICIA y DR. VÍCTOR M. RAMOS OTERO en representación del DEPARTAMENTO DE SALUD<br><br>Parte Recurrida | TA2025RE00013 | *MANDAMUS* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2025CV08170<br><br>Sobre:<br>*Petición de Orden- Corrección de Acta al Registro Demográfico* |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Salgado Schwarz, Carlos, G. Juez Ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, a 22 de diciembre de 2025.

Comparece el señor Marcos José Aybar Perdomo ("Sr. Aybar" o "Peticionario") y mediante recurso de *Mandamus* nos solicita que le ordenemos al Registro Demográfico producir todos los documentos relacionados al matrimonio entre él y la señora Ana Luz Soto Pantojas ("Sra. Soto"), así como una certificación del estatus civil actual de Peticionario.

Por los fundamentos que exponemos a continuación, se **desestima** el recurso de epígrafe por falta de jurisdicción.

-I-

A continuación, exponemos los hechos pertinentes a la controversia ante nos.

El 11 de septiembre de 2025, el Peticionario presentó una *Petición de Corrección en Acta de*

*Defunción*[1]. En esa ocasión, el Sr. Aybar señaló que contrajo matrimonio con la Sra. Soto el 8 de diciembre de 1993 y posteriormente se separaron, pero nunca solicitó la disolución del matrimonio. Como parte de las indagaciones hechas por el Peticionario, este advino en conocimiento de que la Sra. Soto se casó el 16 de diciembre de 1994 con el señor Mario Escalera Rijos y posteriormente se divorció. A tales efectos, el Peticionario le solicitó al Registro Demográfico una serie de documentos a fin de determinar el remedio adecuado. Posteriormente, el foro de instancia ordenó al Peticionario notificar al Ministerio Público[2] y traer al pleito al Departamento de Salud por tratarse de un asunto contencioso[3]. A fin de enmendar la Demanda y presentar los proyectos de emplazamiento, el foro de instancia le concedió al Peticionario un término de veinte (20) días. Transcurrido el término provisto sin la comparecencia del Peticionario, y a tenor con una Orden emitida por el foro primario el 5 de noviembre de 2025, este presentó una *Moción Solicitando Término Adicional Para Mostrar Causa*[4] por la cual no debía desestimarse la petición presentada al amparo de la Regla 39.2 de Procedimiento Civil. Atendida la moción, el foro de instancia le concedió al Peticionario un término de diez (10) días para mostrar causa[5].

De forma paralela, el 24 de noviembre de 2025, el Peticionario presentó la *Petición de Mandamus*[6] que aquí

---

[1] Véase Entrada #1 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Véase Entrada #2 de SUMAC.
[3] Véase Entrada #7 de SUMAC.
[4] Véase Entrada #9 de SUMAC.
[5] Véase Entrada #10 de SUMAC.
[6] Véase Entrada #11 de SUMAC, y Entrada #1 del expediente del Tribunal de Apelaciones de SUMAC.

evaluamos, a fin de que el Registro Demográfico entregue los documentos solicitados anteriormente.

-II-

## A. Jurisdicción

Es norma reiterada en nuestro ordenamiento jurídico procesal que los *"tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen."*[7] La jurisdicción es el poder o autoridad de los tribunales para considerar y decidir casos y controversias.[8] Ante la falta de jurisdicción, el tribunal debe así declararlo y proceder a desestimar el recurso -toda vez que cualquier sentencia dictada sin jurisdicción es nula en derecho- pues la ausencia de jurisdicción es insubsanable.[9]

Así pues, estamos imposibilitados de atender recursos prematuros o tardíos. En particular, un recurso prematuro es aquel que se presenta en el tribunal apelativo antes de que este adquiera jurisdicción[10]. En virtud de ello, carece de eficacia y no produce efectos jurídicos[11]. Siendo ello así, un recurso presentado prematuramente adolece de un defecto insubsanable que sencillamente priva de jurisdicción al tribunal que se recurre, pues al momento de su presentación no existe autoridad judicial para acogerlo[12].

---

[7] *SLG Szendrey-Ramos* v. *F. Castillo*, 169 DPR 873, 882 (2007); *Peerles Oil* v. *Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).
[8] *Allied Mgmt. Group.* v. Oriental Bank, 204 DPR 374, 385 (2020); *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011).
[9] *Shell* v. *Srio. Hacienda*, 187 DPR 109, 123 (2012).
[10] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[11] *Íd.*, págs. 97-98.
[12] *Carattini v. Collazo Syst. Analysis Inc.*, 158 DPR 345, 370 (2003).

## B. *Mandamus*

El recurso de *mandamus* es un auto discrecional y altamente privilegiado cuyo propósito es ordenar a un funcionario público o a un tribunal de inferior jerarquía, al cumplimiento de algún acto o deber no discrecional que le ha sido impuesto por ley.[13] Ese acto tiene que formar parte de los deberes y atribuciones de quien es compelido, ya que el auto de *mandamus* no confiere nueva autoridad ni tampoco provee facultades adicionales.[14]

La doctrina establece que antes de presentar un recurso de *mandamus* es requisito que el peticionario le haya requerido al demandado el cumplimiento del deber ministerial que se le exige.[15] No obstante, esta condición cuenta con dos excepciones: primero, cuando es claro que el requerimiento sería uno inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; segundo, cuando el deber que se pretende exigir es uno que gira en torno a asuntos de gran interés y carácter público. De igual forma, no procede el *mandamus* cuando haya un recurso adecuado y eficaz en el curso ordinario de la ley.[16] El propósito de este recurso no es reemplazar remedios legales, sino suplir la falta de ellos. Además, la naturaleza altamente privilegiada del recurso conlleva que el mismo no proceda como cuestión de derecho, sino que su expedición descanse en la sana discreción del tribunal.[17]

---

[13] Artículo 649 del Código de Enjuiciamiento Civil, 32 LPRA § 3421; véase, *Acevedo Vilá v. Aponte Hernández* 168 DPR 443, 454 (2006); *Báez Galib y otros v. C.E.E. II*, 152 DPR 382, 391-392 (2000).
[14] Artículo 649, supra.
[15] *Noriega v. Hernández Colón*, 135 DPR 406, 448-449 (1994).
[16] Artículo 651 del Código de Enjuiciamiento Civil, 32 LPRA § 3423; véase, *Álvarez de Choudens v. Tribunal Superior*, 100 DPR 235 (1975).
[17] *Báez Galib y otros*, supra, págs. 391-392 (2000).

El auto de *mandamus* por su naturaleza privilegiada, sólo debe ser expedido luego de una sosegada y ponderada evaluación de las circunstancias que lo rodean y luego de que el tribunal quede convencido de que se cumplen con todos los requisitos que lo autorizan. Así lo ha reconocido el Tribunal Supremo:

> Para que deba expedirse un auto de *mandamus*, sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto "altamente privilegiado", según expresa la ley de su creación, 32 LPRA sec. 3421, y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial. En otras palabras, el remedio no se concede ex debito justitiae y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto.[18]

-III-

En el presente caso, el Peticionario le solicitó una serie de documentos al Registro Demográfico a fin de esclarecer su estatus civil. Sin embargo, ante el silencio de la agencia, el Sr. Aybar presentó, de forma simultánea, una Petición de Corrección al Acta de Defunción ante el TPI, y una *Petición de Mandamus* ante este Tribunal. Por lo tanto, nos corresponde determinar si procede nuestra intervención. Veamos.

---

[18] *Dávila v. Superintendente de Elecciones*, 82 DPR 264, 283-284 (1960).

Según surge del expediente de epígrafe, luego de la presentación de la petición de corrección de acta de defunción ante el TPI, y por tratarse de un asunto contencioso, el Sr. Aybar solicitó que se expidieran los emplazamientos a favor del Secretario de Salud y de la Secretaria de Justicia, ambos en su capacidad oficial. A pesar de que no se han presentado las correspondientes alegaciones responsivas, ambos funcionarios se encuentran dentro del término provisto por nuestro ordenamiento jurídico para ello. Es decir, el Peticionario acudió ante este Tribunal previo a obtener una determinación por parte del foro de instancia sobre su solicitud original. Por lo tanto, la presentación del recurso de *mandamus* ante este Tribunal resulta prematura, lo que nos priva de jurisdicción para atender el asunto.

-IV-

Por los fundamentos que anteceden, se ***desestima*** el recurso por su presentación prematura.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones