ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| ZAZULES INVESTMENT, LLC<br><br>Parte Apelante<br><br>V.<br><br>LUMA ENERGY, LLC<br><br>Parte Apelados | TA2025AP00728 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV07146<br><br>Sala: 808<br><br>Sobre: MANDAMUS |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 13 de febrero de 2026.

Comparece Zazules Investment, LLC ("Zazules" o "Apelante") y solicita que revisemos la Sentencia emitida el 12 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro de instancia" o "foro apelado"). En esa ocasión, el foro de instancia desestimó la demanda con perjuicio y le impuso a la parte Apelante el pago de honorarios por temeridad[1] en favor de Luma Energy, LLC y de la Autoridad de Energía Eléctrica.

Por los fundamentos que exponemos a continuación, **confirmamos** la determinación apelada.

-I-

A continuación, detallamos los hechos pertinentes a la controversia de epígrafe.

---

[1] Mediante Resolución dictada el 3 de diciembre de 2025, el foro de instancia dejó sin efecto la imposición de honorarios por temeridad contra Zazules. Véase Entrada #76 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

El 11 de agosto de 2025, Zazules presentó una *Demanda* contra la Autoridad de Energía Eléctrica ("AEE") y Luma Energy, LLC ("LUMA") ("Apeladas"). Zazules alegó haber identificado errores de facturación que procedió a objetar de conformidad con el Reglamento Núm. 8863 del 1 de diciembre de 2016[2] ("Reglamento Núm. 8863"). En su petición, solicitó la expedición del recurso de *mandamus* a fin de que la AEE y LUMA cumplieran con las disposiciones del Reglamento sobre el procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico por Falta de Pago. Así las cosas, el 25 de agosto de 2025, LUMA presentó una *Comparecencia Especial en Solicitud de Desestimación de la Demanda al amparo de la Regla 10.2 de Procedimiento Civil*[3]. En su escrito, LUMA solicitó la desestimación del pleito bajo la doctrina de cosa juzgada tras alegar que Zazules había presentado una Demanda que incluía las mismas partes y alegaciones ante el Tribunal de Primera Instancia de Bayamón. Además, alegó que el Negociado de Energía de Puerto Rico ("Negociado de Energía") es el foro con jurisdicción primaria exclusiva para atender este tipo de asuntos. Ese mismo día, la AEE presentó una *Moción en Solicitud de Desestimación*[4] en la que presentó los mismos argumentos esbozados por LUMA. En respuesta a ello, el 31 de agosto de 2025, Zazules presentó una *Oposición a Mociones de Desestimación Radicadas por la Autoridad de Energía Eléctrica y Luma Energy, LLC*[5]. En la moción, la parte apelante adujo que no aplica la doctrina de cosa juzgada ni la ley del caso "*por cuanto lo que se le está*

---

[2] *Reglamento Sobre El Procedimiento Para La Revisión De Facturas Y Suspensión Del Servicio Eléctrico Por Falta De Pago*.
[3] Véase Entrada #7 del expediente de Primera Instancia en SUMAC.
[4] *Íd.*, Entrada #13.
[5] *Íd.*, Entrada #16.

*solicitando a ese Honorable Tribunal es que ordene a dichas demandadas a cumplir con un deber ministerial que está consignado en la ley y el reglamento que gobierna y les obliga en cuanto al tema de la solución de objeciones de sus abonados"*[6].

Evaluados los planteamientos de las partes, el 12 de septiembre de 2025, el foro de instancia emitió una *Sentencia*[7] desestimando la Demanda con perjuicio por carecer de jurisdicción para atender el asunto. Además, el foro apelado le impuso a Zazules el pago de honorarios de abogado por temeridad en favor de LUMA y la AEE por la cantidad de $2,000.00 a favor de cada una de las Apeladas. Ante tal determinación, el 26 de septiembre de 2025 Zazules presentó una *Solicitud de Reconsideración de Sentencia*[8]. Entre los planteamientos de la Apelante, esta hizo referencia al caso presentado ante el Negociado de Energía e indicó que el crédito adjudicado a su favor por la suma de $51,538.10 fue exclusivamente sobre las objeciones relacionadas a penalidades facturadas incorrectamente. Añadió que dicho crédito no aplica a las objeciones por razón de alto consumo, estimadas incorrectas y otros cargos administrativos que aún permanecen sin adjudicar. Reafirmó su postura de que, ante el incumplimiento de las Apeladas, se ve impedida de agotar el remedio administrativo de acudir al Negociado de Energía.

El 3 de diciembre de 2025, el foro de instancia emitió una *Resolución*[9] en la que declaró *No Ha Lugar* la moción de reconsideración presentada por Zazules. El

---

[6] *Íd.*, pág. 6.
[7] *Íd.*, Entrada #18.
[8] *Íd.*, Entrada #19.
[9] *Íd.*, Entrada #76.

foro apelado basó su determinación en dos fundamentos. Primeramente, que la Apelante incumplió con una Orden del tribunal al no presentar los documentos que evidencian los trámites llevados a cabo ante el Negociado de Energía. En segundo lugar, el foro de instancia hizo referencia al Reglamento Núm. 8863 e indicó que "*ante la presentación oportuna de una objeción de factura, si la compañía de servicio eléctrico no la atiende en el término dispuesto se da por buena la impugnación*"[10]. De conformidad con lo anterior, el foro apelado se sostuvo en la Sentencia emitida.

Inconforme con la determinación del foro de instancia, el 31 de diciembre de 2025, Zazules presentó un escrito de apelación e hizo los siguientes señalamientos de error:

**PRIMER ERROR: EL TPI-SAN JUAN ERRÓ AL NEGARSE A INTERVENIR ANTE LA INACCIÓN DE LUMA/AEE, NEGÁNDOSE A CUMPLIR CON SU DEBER MINISTERIAL DE ADJUDICAR LA IMPUGNACIÓN DE SUS FACTURAS DEBIDAMENTE PRESENTADA POR ZAZULES, IMPIDIÉNDOLE CON ELLO A ACCEDER AL MECANISMO DE REVISIÓN ANTE EL NEPR. ESTA INACCIÓN CONSTITUYE UNA VIOLACIÓN SUSTANCIAL AL DEBIDO PROCESO DE LEY ADMINISTRATIVO, FRUSTRANDO ASÍ EL ACCESO A LOS FOROS REVISORIOS, DEJANDO A LA DEMANDANTE-RECURRENTE EN UN ESTADO DE INDEFENSIÓN JURÍDICA.**

**SEGUNDO ERROR: ERRÓ EL TPI-SAN JUAN AL APLICAR EN LA SENTENCIA LA DOCTRINA DE COSA JUZGADA BASADA EN UNA SENTENCIA PREVIA DICTADA POR EL TPI-BAYAMÓN DECLARÁNDOSE SIN JURISDICCIÓN SOBRE CIERTA SOLICITUD DE SENTENCIA DECLARATORIA RADICADA POR ZAZULES EN CONTRA DE LUMA.**

**TERCER ERROR: ERRÓ EL TPI-SAN JUAN AL RESOLVER QUE NO TIENE JURISDICCÓN SOBRE LA MATERIA POR ENTENDER QUE ZAZULES NO HA AGOTADO EL REMEDIO ADMINISTRATIVO QUE DISPONEN LOS ARTÍCULOS 6.4 Y 6.27 DE LA LEY 57-2014 Y EL ARTÍCULO 3.15 DE LA LEY DEL PROCEDIMIENTO ADMINISTRATIVO UNIFORME ("LPAU").**

---

[10] *Íd.*, pág. 3.

Por su parte, el 30 de enero de 2026, LUMA presentó su alegato en oposición. En síntesis, alegó que el Negociado de Energía es quien ostenta jurisdicción primaria exclusiva para atender la controversia de epígrafe. Ello de conformidad con el Reglamento Núm. 8863 y la Ley Núm. 57 de 27 de mayo de 2014, según enmendada, también conocida como *Ley de Transformación y Alivio Energético* ("Ley 57-2014"). Además, señaló que el propio Reglamento Núm. 8863 anticipa la consecuencia jurídica de una falta de actuación por parte de la compañía de servicio eléctrico. Por lo tanto, el cliente, en este caso Zazules, no queda en un vacío jurídico.

Así las cosas, el 6 de febrero de 2026, la AEE presentó su alegato en oposición. Como parte de sus planteamientos, la AEE sostuvo que es el Negociado de Energía quien ostenta jurisdicción primaria exclusiva para atender la controversia de autos, según lo establece la Ley 57-2014. Además, señaló que tanto la Sentencia dictada por el tribunal de primera instancia en el caso BY2024CV00734, como la Sentencia dictada por este Tribunal en el caso KLRA202400518 advinieron finales y firmes y ambas controversias son idénticas a las que motivan el presente caso, por lo que nos encontramos ante un escenario en el que aplica la doctrina de cosa juzgada.

-II-

**A. *Mandamus***

El recurso de *mandamus* es un auto discrecional y altamente privilegiado cuyo propósito es ordenar a un funcionario público o a un tribunal de inferior jerarquía, al cumplimiento de algún acto o deber no

discrecional que le ha sido impuesto por ley.[11] Ese acto tiene que formar parte de los deberes y atribuciones de quien es compelido, ya que el auto de *mandamus* no confiere nueva autoridad ni tampoco provee facultades adicionales.[12]

La doctrina establece que antes de presentar un recurso de *mandamus* es requisito que el peticionario le haya requerido al demandado el cumplimiento del deber ministerial que se le exige.[13] No obstante, esta condición cuenta con dos excepciones: primero, cuando es claro que el requerimiento sería uno inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; segundo, cuando el deber que se pretende exigir es uno que gira en torno a asuntos de gran interés y carácter público. De igual forma, no procede el *mandamus* cuando haya un recurso adecuado y eficaz en el curso ordinario de la ley.[14] El propósito de este recurso no es reemplazar remedios legales, sino suplir la falta de ellos. Además, la naturaleza altamente privilegiada del recurso conlleva que el mismo no proceda como cuestión de derecho, sino que su expedición descanse en la sana discreción del tribunal.[15]

El auto de *mandamus* por su naturaleza privilegiada, sólo debe ser expedido luego de una sosegada y ponderada evaluación de las circunstancias que lo rodean y luego de que el tribunal quede convencido de que se cumplen

---

[11] Artículo 649 del Código de Enjuiciamiento Civil, 32 LPRA § 3421; véase, *Acevedo Vilá v. Aponte Hernández* 168 DPR 443, 454 (2006); *Báez Galib y otros v. C.E.E. II*, 152 DPR 382, 391-392 (2000).
[12] Artículo 649, supra.
[13] *Noriega v. Hernández Colón*, 135 DPR 406, 448-449 (1994).
[14] Artículo 651 del Código de Enjuiciamiento Civil, 32 LPRA § 3423; véase, *Álvarez de Choudens v. Tribunal Superior*, 100 DPR 235 (1975).
[15] *Báez Galib y otros*, supra, págs. 391-392 (2000).

con todos los requisitos que lo autorizan. Así lo ha reconocido el Tribunal Supremo:

> Para que deba expedirse un auto de *mandamus*, sin embargo, no es suficiente que el peticionario tenga un derecho claro a lo que solicita y que el demandado tenga la obligación correspondiente de permitir el ejercicio de ese derecho. Se trata de un auto "altamente privilegiado", según expresa la ley de su creación, 32 LPRA sec. 3421, y los tribunales tienen necesariamente que medir todas las circunstancias concurrentes, tanto al determinar si debe o no expedirse el auto como al fijar el contenido de la orden, una vez resuelta en la afirmativa la cuestión inicial. En otras palabras, el remedio no se concede ex debito justitiae y tan pronto se reconoce el derecho del peticionario, sino únicamente cuando el tribunal esté convencido de que se cumplirán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el adecuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equilibrio posible entre los diversos intereses en conflicto.[16]

**B. Jurisdicción Primaria Exclusiva y Concurrente**

El término jurisdicción se ha definido como el poder o autoridad de un tribunal para considerar y decidir casos y controversias.[17] Los foros judiciales en Puerto Rico son tribunales de jurisdicción general, por lo que tienen autoridad para entender en cualquier causa de acción que presente una controversia propia de adjudicación, salvo que se les haya privado de jurisdicción sobre la materia.[18] Nuestro más alto foro ha indicado que la jurisdicción sobre la materia se refiere a la capacidad del tribunal para atender y

---

[16] *Dávila v. Superintendente de Elecciones*, 82 DPR 264, 283-284 (1960).

[17] *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 499-500 (2019); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 267 (2018).

[18] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014); *Clase A, B y C v. PRTC*, 183 DPR 666, 686 (2011).

resolver una controversia sobre un aspecto legal.[19] Solamente el Estado, por medio de legislación, puede otorgar o privar de jurisdicción sobre la materia a un tribunal.[20]

La doctrina de jurisdicción primaria tiene el propósito de determinar dónde debe instarse una reclamación.[21] Es decir, si la acción debe presentarse ante la agencia o ante el Tribunal General de Justicia en primera instancia.[22] Dicha doctrina tiene su origen en la jurisprudencia.[23] Ahora bien, esta doctrina tiene dos vertientes: la jurisdicción primaria exclusiva y la jurisdicción primaria concurrente.

La jurisdicción primaria exclusiva es de aplicación cuando una ley o estatuto le confiere jurisdicción a determinado organismo administrativo, en donde establece que este será el único foro con facultad para atender, inicialmente, determinada controversia. Esta vertiente *"persigue suplir un procedimiento ágil y sencillo, poco costoso, que atienda el asunto sin el rigor procesal que generalmente ha caracterizado a los tribunales tradicionales."*[24]

Por lo tanto, cuando la ley confiere jurisdicción exclusiva al organismo administrativo, los tribunales quedan excluidos de intervenir en primera instancia.[25] Es decir, los tribunales estarán impedidos de intervenir inicialmente en el asunto por disposición estatutaria.[26]

---

[19] *MCS Advantage, Inc. v. Fossas Blanco et al.*, 211 DPR 135, 145 (2023); *Cobra Acquisitions v. Municipio de Yabucoa et al.,* 210 DPR 384, 394 (2022); *Rodríguez Rivera v. De León Otaño*, supra.
[20] *Rodríguez Rivera v. De León Otaño*, supra, a la pág. 708.
[21] *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 DPR 906, 920-921 (2001); *Mun. de Caguas v. AT&T*, 154 DPR 401, 410 (2001).
[22] *Ortiz v. Panel F.E.I.*, 155 DPR 219, 242-243 (2001).
[23] *Gracia Ortiz v. Policía de P.R.*, 140 DPR 247, 251 (1996).
[24] *CBS Outdoor v. Billboard One, Inc. et al.,* 179 DPR 391, 404 (2010).
[25] *Íd.*
[26] *Rivera Ortiz v. Mun. de Guaynabo*, 141 DPR 257, 268 (1996).

La jurisdicción primaria exclusiva no soslaya terminantemente la revisión judicial, sólo la pospone hasta que el organismo administrativo emita su decisión final.[27] Además, si se determina que a la agencia se le concedió jurisdicción estatutaria exclusiva, no es necesario hablar de la doctrina de jurisdicción primaria concurrente.[28]

Por otro lado, la jurisdicción primaria concurrente reconoce la existencia de una jurisdicción concurrente entre el foro administrativo y el foro judicial. Sin embargo, de ordinario, el foro judicial no ejerce jurisdicción en el asunto y permite que la agencia ejerza su jurisdicción, ya que esta es la entidad que tiene el conocimiento técnico necesario para entender en el asunto en controversia.[29] Así pues, se trata de una doctrina de deferencia a la agencia administrativa cuando existan razones importantes para justificarla.

**C. Ley de Transformación y Alivio Energético**

En lo pertinente a la controversia de epígrafe, la Ley Núm. 57-2014, según enmendada, conocida como "*Ley de Transformación y Alivio Energético*"[30] fue promulgada con el propósito de fomentar la operación y administración de un sistema eléctrico eficiente y de costos justos y razonables. Con el fin de lograr dicho objetivo se creó el Negociado de Energía, el cual se encarga de fiscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrico en Puerto Rico. Así, dicha ley dispone que el Negociado de Energía tendrá jurisdicción primaria exclusiva sobre diversos

---

[27] *CBS Outdoor v. Billboard One, Inc. et al.*, supra, a la pág. 405.
[28] *Rodríguez Rivera v. De León Otaño*, supra, a las págs. 710-711.
[29] *CBS Outdoor v. Billboard One, Inc. et al.*, supra, a la pág. 406.
[30] 22 LPRA sec. 1051 et seq.

temas. En particular, el Artículo 6.4 establece lo siguiente:

(a) El Negociado de Energía tendrá jurisdicción primaria exclusiva sobre los siguientes asuntos:

[…]

(2) Los casos y controversias relacionadas con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica.

Es decir, cuando surgen controversias relacionadas a la verificación de facturas de las compañías de energía eléctrica a sus clientes por los servicios prestados, estas deben ser atendidas primeramente por el Negociado de Energía y no por los Tribunales de Puerto Rico. Esto es así, ya que la *Ley de Transformación y Alivio Energético*, supra, expresamente le confiere jurisdicción primaria exclusiva a dicha entidad para atender el asunto en primera instancia.

Por su parte, el Artículo 6.27 de la referida ley, dispone, en parte pertinente, lo siguiente:

Una vez notificada la objeción y depositada la cantidad correspondiente, la compañía de energía certificada deberá iniciar la investigación o el proceso adjudicativo que proceda dentro del término de treinta (30) días, contados a partir de la fecha en que el cliente notificó su objeción. En caso de que la compañía de energía certificada no inicie el proceso dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente. La compañía de energía certificada deberá concluir la investigación o proceso administrativo, emitir la correspondiente resolución e informar al cliente el resultado dentro de un término de sesenta (60) días contados a partir de la fecha de comienzo de la investigación o proceso adjudicativo. Si la compañía de energía certificada no emite la referida resolución o no informa al cliente de la misma dentro del término de sesenta (60) días, la objeción será adjudicada a favor del cliente. Al notificar el resultado de la investigación, la compañía de servicio eléctrico informará al cliente sobre su derecho a solicitar la reconsideración de dicho resultado y el término dentro del cual deberá solicitar la reconsideración.

De igual forma, el Reglamento Núm. 8863 de 1 de diciembre de 2016, conocido como el *Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico* fue promulgado con el propósito de establecer las normas que regirán los mecanismos y procedimientos que las compañías de servicio eléctrico pondrán a disposición de sus clientes para resolver las controversias que surjan en relación con las facturas que estas emitan. De igual forma, el Reglamento Núm. 8863 establece el procedimiento a seguir para objetar las facturas, el cual debe ser agotado antes de solicitar una revisión ante el Negociado de Energía. Sobre este particular, la Sección 4.10 lee como sigue:

> Una vez presentada la objeción y solicitud de investigación y realizado el pago correspondiente según las disposiciones de la Sección 4.05 de este Reglamento, la Compañía de Servicio Eléctrico deberá iniciar la investigación o el proceso administrativo que proceda y notificar por escrito al Cliente dentro de un término de treinta (30) días, contados a partir de la fecha en que el Cliente presentó su objeción. La notificación deberá incluir la fecha en que la Compañía de Servicio Eléctrico comenzó la investigación.
>
> En caso de que la compañía no inicie la investigación o proceso administrativo correspondiente en torno a la objeción y solicitud de investigación dentro del término establecido en esta Sección, se entenderá que la compañía ha declarado con lugar la objeción del Cliente y que se obliga a hacer los ajustes correspondientes en la factura objetada, según solicitado por el Cliente. La compañía deberá efectuar los referidos ajustes y notificar por escrito al Cliente dentro del término de quince (15) días, contados a partir de la fecha de vencimiento del término original de treinta (30) días.

-III-

En el presente caso, Zazules alega que erró el foro de instancia al negarse a intervenir ante la inacción de LUMA y la AEE de adjudicar la impugnación de múltiples facturas. Además, aduce que no es de aplicación la

doctrina de cosa juzgada ni de agotamiento de remedios. Por estar íntimamente relacionados atenderemos los señalamientos de error de manera conjunta.

Según surge de las alegaciones, desde el año 2019 Zazules ha impugnado múltiples facturas de servicio eléctrico. Sin embargo, a pesar de ello, las Apeladas no han adjudicado tales impugnaciones, incluso, la Apelante alega haber recibido varios avisos de desconexión del servicio por no haber emitido el pago total de la deuda. Como parte de su planteamiento, Zazules sostiene que la inacción de las Apeladas en atender las facturas impugnadas le impide acudir al Negociado de Energía, foro que ostenta jurisdicción primaria exclusiva para atender tales asuntos. Por tal razón, solicita la expedición del auto de *mandamus*.

Es norma reiterada que el auto de *mandamus* es uno altamente privilegiado, discrecional y sólo deberá expedirse cuando se determine que no existe otro remedio legal adecuado para hacer cumplir el deber ministerial invocado. Tal y como señalamos en el acápite II, el propósito de este recurso no es reemplazar remedios legales, sino suplir la falta de estos. Luego de un ponderado análisis del expediente ante nuestra consideración, concluimos que no estamos ante un vacío jurídico que requiera nuestra intervención. Veamos.

El Reglamento Núm. 8863 establece el procedimiento a seguir para poder objetar una factura y solicitar la investigación correspondiente. Zazules alega que actuó de conformidad con el Reglamento Núm. 8863, pero a pesar de ello, no ha recibido respuesta por parte de las Apeladas, lo que le impide acudir al Negociado de Energía. No le asiste la razón.

La Ley 57-2014 dispone que si la compañía de energía no inicia un proceso de investigación o un proceso adjudicativo dentro de los treinta (30) días posteriores a la notificación de la objeción, tal objeción será adjudicada a favor del cliente. Por lo tanto, en el supuesto de que la compañía de energía no adjudique las objeciones, como alega Zazules que ha ocurrido en este caso, ello no impide a la Apelante acudir en revisión ante el Negociado de Energía. Es decir, Zazules no queda desprovista de remedio ni atada de manos, según alega. Además, la Ley 57-2014 señala que el Negociado de Energía tiene jurisdicción primaria exclusiva para atender las controversias relacionadas con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica. Por lo tanto, es al Negociado de Energía a quien le corresponde adjudicar -inicialmente- las reclamaciones instadas por la Apelante. El Tribunal General de Justicia carece de jurisdicción para atender la presente controversia.

-IV-

Por los fundamentos que anteceden, **confirmamos** la Sentencia apelada y, en consecuencia, **denegamos** la expedición del auto de *mandamus*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones